**Abraham TRAUB, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 12610.**

United States Court of Appeals District of Columbia Circuit.

Argued June 16, 1955.

Decided Sept. 29, 1955.

Mr. John J. Wilson, with whom Mr. Harry I. Rand, Washington, D. C., was on the brief, for appellant.

Mr. Max H. Goldschein, Washington, D. C., of the bar of the Supreme Court of Tennessee, pro hac vice, by special leave of Court, with whom Messrs. Leo A. Rover, U. S. Atty., William A. Friedlander and John J. Sexton, Jr., Special Assts. to the Atty. Gen., were on the brief, for appellee.

Before EDGERTON, Chief Judge, and BAZELON and FAHY, Circuit Judges.

BAZELON, Circuit Judge.

Abraham Traub, an attorney, appeals his conviction for criminal contempt [1] on charges that he disobeyed a court order directing him to produce documents and to testify in response to a grand jury subpoena duces tecum.

The subpoena, issued in the course of a grand jury investigation of the Federal Housing Administration and related matters, designated certain papers belonging to him and his law firm, including, as item 3 therein, "vouchers and bills to support fees received from 1947 to 1953, inclusive." When appellant appeared in response to the subpoena on November 3, 1954, he left some papers in an anteroom, but refused to bring any before the grand jury on the ground that their production and identification before the grand jury would violate his

---

1. 62 Stat. 701 (1948), 18 U.S.C. § 401 (1952).

rights under the Constitution's Fourth and Fifth Amendments. He also invoked the protection of the Fifth Amendment's bar against self-incrimination in his refusal to answer specific questions as to whether he had brought with him each of the items called for in the subpoena, including the question: "Did you bring with you the vouchers and bills to support fees received from 1947 to 1953, inclusive, as set forth in your subpoena duces tecum?"

On November 5, 1954, the grand jury requested the District Court to compel production of the records and answers to the questions. To obtain a ruling on his claim that identification of the records or answers to specific questions concerning their existence would tend to incriminate him, appellant offered to submit the records for the court's inspection. The court rejected the offer and refused to rule on the merits of the claim until appellant produced and identified the records before the grand jury. It directed appellant to bring the records before the grand jury, identify them and answer the questions he had refused to answer. Then it directed "that if then, when the records are before the Grand Jury and identified, that if the witness makes a claim of privilege, appropriate steps may be taken to bring those records before the court to enable the Court to understand and determine whether or not there is merit to the claim of privilege or not."

Immediately thereafter appellant reappeared before the grand jury. With the exception of the papers described in item 3 of the subpoena, he stated either that he had brought the records, identifying them by reference to boxes or envelopes in which they were contained, or that there were no such records. But with respect to the item 3 papers, the following occurred:

"Q. Now, did you bring in the vouchers and bills to support fees received from 1947 to 1953, inclusive? A. No.

"Q. Where are they, Mr. Traub? A. I refuse to answer that question on the ground that it might tend to incriminate me.

\* \* \* \* \*

"Q. Didn't you hear [the judge] say he wanted you to bring in the records that are set forth in the subpoena? A. Yes. I haven't any vouchers and bills to support the fees from '47 to '53.

\* \* \* \* \*

"Q. What did you do with them? Did you destroy them? A. I refuse to answer that question, relying upon my privilege extended to me under the Fifth Amendment.

"Q. You are refusing to bring them in? A. I did not, Mr. Goldschein. I say I haven't got them."

Later, after consulting with counsel outside the grand jury room, appellant testified:

"With the exception of a few pending unpaid bills for 1953, which can be made available on Monday, I have brought with me all the records called for under item 3 of the subpoena *which I had in my possession at the time the subpoena was served on me.*" [Emphasis supplied.]

The questioning then proceeded in the following manner:

"Q. Well, now, Mr. Traub, will you tell the Grand Jury where those records are now? I am talking about the vouchers and bills to support fees received from 1947 to 1953, inclusive, listed in the subpoena. A. I refuse to answer that question on the ground, relying upon my privilege extended me under the Fifth Amendment of the Constitution; on the further ground that any answer may tend to incriminate me.

\* \* \* \* \*

"Q. Did you have the vouchers and bills to support fees received from 1947 to 1953 as called for in

this subpoena when you came up in Washington last month? A. I refuse to answer that question on the ground that any answer may tend to incriminate me.

"Q. And you won't tell us where, those vouchers and bills to support fees received from 1947 to 1953, inclusive, are, will you? A. I refuse to answer that question on the ground that any answer may tend to incriminate me.

\* \* \* \* \*

"Q. Will you tell us where those are that were not in your possession at the time you received the subpoena? A. I refuse to answer that question on the ground that any answer may tend to incriminate me."

He was thereupon temporarily excused by the grand jury which directed him to return with the item 3 records.[2]

When appellant reappeared on February 28, 1955, he reiterated his claim that the privilege protected him from testifying before the grand jury. In response to many questions concerning production of the vouchers and bills referred to in the subpoena, appellant steadfastly insisted that he had produced all in his possession or control at the time the subpoena was served upon him.

On March 7, 1955, the grand jury returned a written presentment charging him with criminal contempt for obstructing justice and for disobeying the court's order of November 5

"(1) by wilfully and deliberately refusing to obey the order of this Court to produce before the Grand Jury the papers, books and records called for by the subpoena, specifically the 'vouchers and bills to support fees received from 1947 to 1953, inclusive,' and (2) by refusing to obey the order of the Court to tell the Grand Jury whether or not he had brought with him all such papers, books, and records, specifically the 'vouchers and bills to support fees received from 1947 to 1953, inclusive.' "

A plea of not guilty was entered. After denying appellant's demand for a jury trial, the court adjudged him in contempt in an oral announcement framed in language almost identical to that of the presentment.[3]

About a month later, the court entered findings of fact and conclusions of law in which it construed its November 5 order, directing appellant to produce documents and to answer questions, as encompassing "all the documents called for by the subpoena," not merely those in appellant's "possession and control at the time the subpoena was served on him." [4]

---

2. On November 24, 1954, appellant filed a motion for return of his books and papers which he had delivered to the grand jury. The motion was denied February 28, 1955. That case is now pending on appeal in this court (No. 12596) and does not affect our consideration of this case.

3. The government's case consisted of four exhibits: (A) the official transcript of court proceedings on November 5 (which included the complete transcript of appellant's testimony before the grand jury on November 3); (B) the subpoena served on appellant; (C) the transcript of appellant's testimony before the grand jury on November 5, 1954; and (D) the transcript of appellant's testimony before the grand jury on February 28, 1955. The only evidence offered by appellant (with one minor exception not pertinent here) related to substantiation of the merits of his claim of the privilege. But the court excluded this evidence on the ground that the claim was premature because the records had not been produced before the grand jury.

4. Finding of Fact No. 5:
"The Order of this Court of November 5 to the said witness Traub to bring in and identify before the Grand Jury the papers, books, and records called for by the subpoena, which included the aforesaid vouchers and bills and to answer certain questions concerning whether or not he had brought with him the aforesaid documents called for by the subpoena including the question 'Did you bring with you the vouchers and bills to support fees received from 1947 to 1953, inclusive, as set forth in your subpoena

The conviction for failure to produce all the documents listed in item 3 of the subpoena is invalid for at least two independent reasons.

██ First, it is not clear whether the court's direction to produce referred to all the documents or only those in appellant's possession and control when the subpoena was served upon him. At the hearing in which the direction was issued, the court made statements pointing both ways. Appellant's asserted belief that the direction referred only to the latter is supported by the court's statements that appellant "hasn't been asked to produce any non-existent records"; that the subpoena called merely for "the records that he has"; and that "we must take his word for it as to whether or not he has responded to the requirements of the subpoena"; that "if he can't be sure that he has every piece of paper that has been subpoenaed he can make that clear in his answer." There was, therefore, an ambiguity in the court's direction, read as a whole, which precludes the essential finding of willful and contumacious resistance to the court's authority.[5] The attempt to remove this ambiguity in

findings of fact sustaining the contempt charges is without effect.[6] To serve as a valid basis for contempt, the court's direction must be clear and unequivocal at the time it is issued.[7]

██ Second, appellant testified before the grand jury that he had produced all the documents designated in item 3 of the subpoena that were in his possession and control when the subpoena was served upon him.[8] A subpoena duces tecum can require no more.[9] Since it was not shown that his testimony was perjurious, or that he obstructed justice by destroying or causing the destruction of the missing records in anticipation of the subpoena,[10] his testimony must be accepted as establishing compliance with the subpoena. We are aware of no principle under which an adjudication of contempt may be sustained in these circumstances.

██ The conviction for refusal to testify must also fail. The only question which the court specifically directed appellant to answer is:

"Did you bring with you the vouchers and bills to support fees re-

duces tecum?' *referred to all the documents called for by the subpoena* and that therefore the said Traub disobeyed the Order of the Court by restricting his response to the subpoena and to the aforesaid question to the vouchers and bills in his possession and control at the time the subpoena was served on him * * *" [Emphasis supplied.]

5. National Labor Relations Board v. Bell Oil & Gas Co., 5 Cir., 1938, 98 F.2d 405, 406.

6. Walling v. Crane, 5 Cir., 1946, 158 F.2d 80, 84; Ex parte Buskirk, 4 Cir., 1896, 72 F. 14, 20–21.

7. Walling v. Crane, supra; National Labor Relations Board v. New York Merchandise Co., 2 Cir., 1943, 134 F.2d 949, 952; Berry v. Midtown Service Corp., 2 Cir., 1939, 104 F.2d 107, 111, 122 A.L.R. 1341; McFarland v. United States, 7 Cir., 1923, 295 F. 648, 650. Only recently the Supreme Court reversed convictions for contempt based on ambiguous directions from congressional committees. Quinn v. United States, 1955, 349 U.S. 155, 165–170, 75 S.Ct. 668; Emspak

v. United States, 1955, 349 U.S. 190, 202, 75 S.Ct. 687.

8. He said he had requested his bookkeeper to gather all the vouchers and bills from 1947 to 1953 and that he had personally made a search of his office and "found no other vouchers at all or bills from 1947 to 1953 other than what she [the bookkeeper] had delivered to me."

9. "It is well settled that a person cannot be compelled to produce, under a subpoena, a document which is neither in his possession nor under his control." In re Rivera, D.C.S.D.N.Y.1948, 79 F.Supp. 510, 511; United States v. Patterson, 2 Cir., 1955, 219 F.2d 659, 662; Munroe v. United States, 1 Cir., 1914, 216 F. 107, 111–112, L.R.A.1915B, 980.

10. The Government does not contend, nor is there any evidence in this record, that there were in existence documents covered by item 3 of the subpoena which appellant had in his possession or control and which he failed to produce. Cf. United States v. Bryan, 1950, 339 U.S. 323, 330–331, 70 S.Ct. 724, 94 L.Ed. 884.

ceived from 1947 to 1953, inclusive, as set forth in your subpoena duces tecum?"

Appellant's entire testimony before the grand jury, which we previously described, indicated that, although he had brought all the records that were in his possession or control, he did not have, and therefore did not bring, all the records called for.[11] When appellant reappeared before the grand jury following the court's direction, he was asked: "Now, did you bring in the vouchers and bills to support fees received from 1947 to 1953, inclusive." He replied, "No." Shortly thereafter he said: "I haven't any vouchers and bills to support the fees from '47 to '53." Then appellant testified:

"With the exception of a few pending unpaid bills for 1953, which can be made available on Monday, I have brought with me all the records called for under item 3 of the subpoena which I had in my possession and control at the time the subpoena was served on me."

Appellant repeated the substance of this statement several times. We think these responses are sufficient to show there is no basis in fact for the charge that he willfully refused to answer.[12]

The Government's brief states that the specific question just discussed "is the *only* question which appellant is charged with contempt for failing to answer."[13] Yet, it urges, appellant's refusal to answer other questions relating to the existence and location of the missing records is a ground for sustaining the present conviction. The Government explains the apparent inconsistency in its position by the following novel contention: A witness who fails to produce all the papers listed in a subpoena is guilty of contempt unless he demonstrates that he is acting in good faith. This demonstration of good faith requires that he answer questions relating to the existence and location of papers he has not produced even though the answers will incriminate him. In other words, the witness can choose his own brand of hemlock. He can destroy himself either by failing to produce records called for by a subpoena (even if they were not in his possession or control when the subpoena was served); by refusing to answer questions (even if he has claimed the protection of the privilege and there has been no judicial determination that it is not available); or by giving incriminating answers. This view is plainly untenable.[14]

■ Appellant rested his refusal to answer questions relating to the existence and location of the missing records upon his claim of the privilege against self-incrimination.[15] It is unnecessary to decide whether appellant is entitled to the protection of the privilege since, as we mentioned earlier, the court never directed him to answer those questions and rejected his request for a ruling on the merits of his claim before the present

11. That the prosecutor so understood the testimony is apparent from the following question he asked appellant: "Now, do we understand you to say, Mr. Traub, that you will not produce the records called for by the subpoena but not in your possession, and that you refuse to explain where such records are?"

12. In Powell v. United States, 96 U.S.App. D.C. 367, 226 F.2d 269, we reversed an adjudication of contempt based on disobedience of a court order to answer questions before a grand jury where the record also demonstrated that appellant had, in fact, responded to the questions put to him.

13. Government's Brief, p. 4, emphasis supplied.

14. To the extent that Lopiparo v. United States, 8 Cir., 1954, 216 F.2d 87, certiorari denied, 1955, 348 U.S. 916, 75 S.Ct. 297, upon which the Government relies, may be read to the contrary, we do not follow it.

15. A defendant "cannot legally be jailed for contempt for invoking his constitutionally protected privilege not to be a witness against himself." United States v. Patterson, 2 Cir., 1955, 219 F.2d 659, 662.

charges were brought.[16] We hold that no contempt can lie unless the refusal to answer follows an adverse ruling by the court on the claim of the privilege and a clear direction thereafter to answer. Carlson v. United States, 1 Cir., 1954, 209 F.2d 209, 214.[17]

For the foregoing reasons the conviction on appeal is reversed and the case is remanded to the District Court with instructions to enter a judgment of acquittal.

So ordered.

16. In this connection, however, see Powell v. United States, 1955, 96 U.S.App.D.C. 367, 226 F.2d 269.

17. See also Emspak v. United States, 1955, 349 U.S. 190, 202, 75 S.Ct. 687; Quinn v. United States, 1955, 349 U.S. 155, 165–170, 75 S.Ct. 668.