**UNITED STATES of America,
Petitioner-Appellee,**

v.

**Thomas E. JOYCE, Respondent-
Appellant.**

**No. 73-1323.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 24, 1973.

Decided June 13, 1974.

Anna R. Lavin, Thomas E. Joyce, Chicago, Ill., for respondent-appellant.

Scott P. Crampton, Asst. Atty. Gen., William A. Whitledge, Atty., Tax Div., Dept. of Justice, Washington, D. C., James R. Thompson, U. S. Atty., Chicago, Ill., for petitioner-appellee.

Before SWYGERT, Chief Judge, SPRECHER, Circuit Judge, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

Appellant was held in contempt of court for failure to comply with an Internal Revenue summons which directed him, as a corporate official, to produce certain records and documents relating to the tax liability of Guernsey Excess Insurance Company, Ltd. (hereinafter "Guernsey") for the years 1967 through 1969, inclusive. The essential issues raised by appellant in this appeal are as follows: (1) Whether plaintiffs acted within their statutory scope of power in issuing the Internal Revenue summons and whether the district court order holding appellant guilty of contempt was a proper use of the court's power to enforce the summons; (2) whether criminal contempt will lie on the record under 18 U.S.C. § 401(3) in light of the court's direction that appellant use his "best offices" to obtain the records requested by the Internal Revenue Service; and (3) whether appellant can be held in contempt for his failure to obtain the records through the activities and cooperation of third persons.

Appellant asserts, first of all, that the Internal Revenue summons [1] was not issued within the statutory authority of the Internal Revenue Service, and therefore could not be enforced by the district court. The contention here is, in effect, that since the power to issue the summons was never demonstrated or justified by petitioners, the jurisdiction of the district court to enforce the summons was nonexistent, thus rendering its contempt order void and of no effect. In support of this position, appellant has noted that since Guernsey was a British Corporation and had written only rein-

surance, excess, or surplus line insurance in the United States, it was, so appellant contends, exempt from taxation and did not have to file United States federal income tax returns.

It has been held in this regard that the Internal Revenue Service is given broad summons power under 26 U.S. C. § 7602. This power has been characterized as an inquisitorial one, and the government need only show that the records it seeks are relevant and material to its investigation of tax liability in order to justify their production. United States v. Turner, 480 F.2d 272, 278–279 (7th Cir. 1973). Further, this Circuit has indicated that a claim of exemption from federal taxes will not thwart a proper inquiry or the use of summonses by the Internal Revenue Service to seek information that is relevant to the determination of tax liability. United States v. Hayes, 408 F.2d 932, 936 (7th Cir. 1969).

We find, therefore, under the guidance of the above-cited authority, that the evidence has shown that the records and documents sought from appellant were relevant and material to the government's investigation of the tax liability of Guernsey, and that therefore the summons issued by the Internal Revenue Service was indeed an authorized exercise of its power. Thus, it was within the district court's jurisdiction to enforce the summons as issued. Accordingly, appellant's attack upon the authority of the Internal Revenue Service to issue the summons and against the district court's exercise of jurisdiction to enforce the summons is rejected as being totally without merit.

Appellant next argues that the district court's order of June 2, 1972, enforcing the Internal Revenue summons, which in pertinent part directed appellant to use his "best offices" to obtain the requested records, lacked required legal specificity in that it failed to clearly and unequivocally define exactly how appellant

---

* Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

1. Issued pursuant to 26 U.S.C. § 7602.

was to proceed in obtaining the pertinent information which was being sought by the Internal Revenue Service in its investigation into Guernsey's tax liability. Appellant contends that an order of the court containing such general and imprecise language will not serve to support a charge of contempt for disobedience under 18 U.S.C. § 401(3) for the reason that it is too vague to be understood and complied with. This, in effect, is the cornerstone upon which the present appeal to this Court rests.

A corollary argument that appellant presents for this Court's consideration is that he was not adequately notified that the proceeding against him was one of criminal contempt pursuant to Rule 42(b), F.R.Cr.P. He contends that the government's motion to have the court hold him in contempt did not describe the nature of the proceeding or the charges against him with the required specificity. He contends, in essence, that he was not aware that the proceeding against him was criminal in nature until the sentence which he labels "punitive" made it obvious to him that such was the case.

 This Court agrees with appellant that the proceeding against him was in the nature of criminal contempt since the character and purpose of the punishment imposed was intended to penalize appellant for a past act—his failure to produce the requested records—rather than to coerce him to produce said records, and to castigate him for acting against the dignity and authority of the court. Shillitani v. United States, 384 U.S. 364, 369, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); Walling v. Crane, 158 F.2d 80, 83 (5th Cir. 1946). As such, Rule 42(b) requires that the notice of such a proceeding state "the essential facts constituting the criminal contempt charged and describe it as such." Harris v. United States, 382 U.S. 162, 165–166, 86 S.Ct. 352, 355, 15 L.Ed.2d 240 (1965). Despite the way the Rule reads, however, it requires no rigorous application that the words "criminal contempt" be included in the petition and rule to show cause as long as the

contemnor realizes that a prosecution for criminal contempt is contemplated. United States v. Mine Workers, 330 U.S. 258, 297–298, 67 S.Ct. 677, 91 L.Ed. 884 (1947). This is especially so where there is no indication that the defendant was confused as to the nature of the proceeding and where he is accorded all procedural rights due defendants in criminal contempt proceedings. F. T. C. v. Gladstone, 450 F.2d 913, 916 (5th Cir. 1971). This Circuit has stated, moreover, that a defendant in a contempt proceeding need not be specifically warned or aware that his conduct could be visited with a criminal penalty as opposed to another sanction. United States v. Seale, 461 F.2d 345, 366 (7th Cir. 1972).

 Upon examination of the record, it is evident that appellant was aware that the proceeding against him was criminal in nature. From the very beginning, the summons which was served on appellant indicated that his failure to comply would render him liable to punishment. During the numerous hearings that were held after appellant failed to produce the records, he was told many times that his conduct would result in his being "sent to jail". Therefore, the omission of the word "criminal" in petitioner's motion did not constitute reversible error. Furthermore, this Court perceives that the essential facts constituting the criminal contempt charge were adequately communicated to appellant by the government's motion of October 3, 1972. Finally, we find that appellant was accorded full procedural due process and was not prejudiced by any alleged infirmity therein.

The district court's order of June 2, 1972, nevertheless, presents quite another matter. As noted above, that order was designed to enforce the Internal Revenue summons. It required appellant to use "his best offices" to produce the books and records sought by the government. The crucial question here, of course, is whether the words "best offices" gave appellant sufficient direction

as to how he was to proceed to try to obtain the records.

It is well established that before one may be punished for contempt for violating a court order, the terms of such order should be clear and specific, and leave no doubt or uncertainty in the minds of those to whom it is addressed. McFarland v. United States, 295 F. 648, 650 (7th Cir. 1923); United States v. DeParcq, 164 F.2d 124, 126 (7th Cir. 1947). Failure to take action required by an order can be punished only if the action is clearly, specifically, and unequivocally commanded by that order. United States v. Fleischman, 339 U.S. 349, 370–371, 70 S.Ct. 739, 94 L.Ed. 906 (1950). Stated another way, it appears to be settled law that contempt will not lie for violation of an order of the court unless the order is clear and decisive and contains no doubt about what it requires to be done. Finally, where there is ambiguity in the court's direction, it precludes the essential finding in a criminal contempt proceeding of willful and contumacious resistance to the court's authority. Traub v. United States, 98 U.S.App.D.C. 43, 232 F.2d 43, 47 (1955).

This Court is of the opinion, on the basis of the evidence, that the district court's order of June 2, 1972, was indeed vague and ambiguous in its language and direction. It did not, in short, prescribe in definite and precise terms exactly what appellant was commanded to do in order to produce the requested records. Therefore, it is inconceivable that appellant's failure to comply with the order could form the basis of a criminal contempt charge against him. Operating to the best of his ability under such nebulous direction, appellant lacked the willful and contumacious resistance to the court's authority which is necessary to support a criminal contempt charge. Only persons who contumaciously refuse to comply with a summons and who willfully fail to produce requested records can be punished for contempt. Reisman v. Caplin, 375 U.S. 440, 447–448, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964). Such was not the case here, particularly in light of the district court's order of June 2, 1972.

In any event, we are cognizant of the fact that one who is charged with contempt of court for failure to comply with a court order makes a complete defense by proving that he is unable to perform or comply. A court will not imprison a witness for failure to produce documents which he does not have, unless he is responsible for them or is impeding justice by not explaining what happened to them. United States v. Bryan, 339 U.S. 323, 330–331, 70 S.Ct. 724, 94 L.Ed. 884 (1950); In re D. I. Operating Company, 240 F.Supp. 672, 676 (D.Nev.1965). Even though a person is a corporate official who assumes a responsibility or duty to act to bring about compliance with a court order to produce records, he is only expected to act within the limits of his power. "If he does all he can [to produce the requested records], he will not be punished. . . ." Fleischman, supra, 339 U.S. at 356–357, 70 S.Ct. at 743.

It would be exhaustive at this point to enumerate the many instances where appellant emphatically and unequivocally stated, under oath, that he was not in possession of the documents sought by the government or where he stated that any documents under his control had already been turned over to the United States Postal Inspector and United States Attorney. Suffice it to say that the record is replete with such instances where appellant used words to the effect that he "did not have any records"; and the fact that the evidence shows that the records were in his possession "at one time" is not conclusive on the question of his access to and ability to produce the records at the time of the government's summons and during the contempt proceeding against him. It is interesting to note in this regard, moreover, that appellant's assertions of his inability to produce the records were made by him with complete knowledge of the consequences that would befall him if his statements were found to be untrue.

We are convinced, therefore, that appellant did everything in his power to try to obtain the records and documents that were required to be produced by the Internal Revenue summons. As an example of his diligence and good faith in this regard, appellant even sent his wife to Ireland (albeit at the court's direction) with the hope that she would be able to obtain the desired documents. Further, the record discloses at least one instance where appellant, through his counsel, indicated his desire to cooperate with the government regarding the production of the records and documents. Such good faith intent and reasonable efforts made by appellant to comply with the summons and the district court's order do not, in the opinion of this Court, warrant the punishment of appellant for his failure to produce the records and documents that were sought by the government to aid its investigation into the possible tax liability of the Guernsey Excess Insurance Company.

Accordingly, the judgment of the district court holding appellant in contempt of court is reversed.