**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Richard W. (Dick) RYLANDER, Sr., et al., Defendant-Appellant.**

**Nos. 80–1813, 80–1702 and 80–1703.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 9, 1981.

Submission Withdrawn Nov. 8, 1982.

Resubmitted May 16, 1983.

Decided Sept. 2, 1983.

---

Joseph F. Harbison, III, Sacramento, Cal., for defendant-appellant.

JoAnn Horn, John F. Murray, Charles E. Brookhart, Washington, D.C., for plaintiff-appellee.

Before ANDERSON, HUG and POOLE, Circuit Judges.

HUG, Circuit Judge:

Richard W. Rylander appeals his convictions of criminal contempt for willfully failing to comply with the district court's order to produce various corporate documents in response to Internal Revenue Service summonses and for failing to appear at a hearing to show cause why he should not be held in contempt. The initial difficulty arose when the IRS tried to obtain certain corporate records and documents from Rylander in order to investigate the tax returns of two corporations of which he had been president. He did not produce the records in response to an IRS summons, contending that he did not possess them. The efforts of the IRS to enforce the summons and obtain contempt sanctions form the genesis of this case.

This case highlights the problems involved in the interrelationship of civil and criminal contempt. Rylander was tried for both civil and criminal contempt in the same proceeding. In *United States v. Rylander,* —— U.S. ——, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983) (*Rylander I*), *reversing* 656 F.2d 1313 (9th Cir.1981), the Supreme Court reversed this court and affirmed the civil contempt citation. Courts frequently have difficulty distinguishing between civil and criminal contempt. *See, e.g., United States v. Powers,* 629 F.2d 619, 626 (9th Cir.1980). Procedurally, the distinction is crucial because criminal contempt proceedings, unlike civil contempt proceedings, require such protections as the sixth amendment right to counsel, the fifth amendment right not to take the witness stand, the "beyond a reasonable doubt" burden of proof, and, in some instances, the right to demand a jury trial. This case illustrates the difficulties of trying civil and criminal contempt cases together.

I

FACTS

The facts demonstrate how a simple matter can mushroom into a very complex case.

It is understandable how a district judge with a busy calendar, whose contact with the case was in the form of numerous brief procedures over a period of many months, could overlook some of the complexities and subtleties.

For our purposes, this case began on January 4, 1979, when the Internal Revenue Service ("IRS") issued administrative summonses directing Richard Rylander, as president of Rylander and Company, Realtors, Inc. and Affiliated Investments and Mortgage Company, to appear before an IRS agent and give testimony regarding his tax liability and that of the two corporations. The summonses also required Rylander to produce various corporate documents. The testimony and documents were sought pursuant to an investigation into Rylander's federal income tax liability for the years 1973 through 1977. When Rylander failed to comply with the summonses, the Government petitioned the district court for enforcement under 26 U.S.C. §§ 7402(b) and ·7604(a).

The district court issued orders on November 19 and 20, 1979, directing Rylander to appear before the court on January 14, 1980, and show cause why the administrative summonses should not be enforced. Rylander returned the orders to the court with a cover letter stating that he was not the president of either corporation and that he had, therefore, been improperly served. He did not appear at the hearing.

The district judge proceeded in Rylander's absence and, on January 15, 1980, issued an order stating:

> The Court heard an offer of proof and oral testimony and argument on the issues of (1) personal jurisdiction over the respondent corporations and (2) IRS possession of records requested in the summonses. Upon consideration of the foregoing, as well as the Declarations filed by Respondent Rylander, the verified petitions of Petitioner Van Den Berg, and the remaining records of these proceedings, the Court finds that it does have jurisdiction over the Respondents, and it is therefore hereby

> ORDERED that Richard (Dick) Rylander, Sr. shall appear on Monday, February 4, 1980 at 10:00 a.m. before Joan Van Den Berg, or other person designated by Petitioner, at the office of the Internal Revenue Service at 801 I Street, Room 292, Sacramento, California, and then and there produce for Petitioner's inspection and copying the records described in the IRS summonses attached hereto as Exhibits A and B, except the following records described in Exhibit A: [1]

The order did not require Rylander to give testimony, only to produce documents.

Rylander appeared on February 4. He did not, however, bring with him any of the documents demanded by the IRS. After being informed of his fifth amendment rights, Rylander stated that he was not the president of either corporation and that he had none of the corporate documents sought. He then refused to answer any questions.

The district court subsequently issued an order on February 11 requiring Rylander to appear on March 10, 1980, and show cause why he should not be held in contempt for failure to comply with the order of January 15 enforcing the summonses. The order required that service be made by February 20. The marshall was unable to effect personal service by February 20, and a new show cause order was issued on February 25. Service was made by mail in accordance with Fed.R.Civ.P. 5(b) on that date. That show cause order required Rylander to appear on March 24 and show cause why he should not be held in contempt of the January 15 order and why he should not immediately produce the records. He was also directed to file a written response to the petition by March 17.

Rylander did not file a response or appear on March 24. However, on March 24 Rylander's son Edwin filed a three-page statement, which had been dictated by Rylander

---

1. The records to be produced were certain records from January 1, 1973 to December 31, 1977, excepting certain records in 1975 which the IRS possessed.

over the telephone from Oregon on Sunday, March 23. The statement informed the court that he had just received word of the order and could not appear and requested that the hearing be rescheduled. He also stated he had appeared on February 4, that he had not refused to produce the records, but that he had produced no records because he had no records.

The Government filed a petition on March 28 seeking both civil and criminal contempt. Based on that petition the court issued an order on March 28 for Rylander to show cause why he should not be adjudged guilty of criminal contempt and why he should not be adjudged guilty of civil contempt for failure to produce the documents. The portion of the order concerning criminal contempt did not specify what particular acts or orders were the basis for the charge. It did, however, refer to the Government's petition. The petition clearly identified the failure to produce the records on February 4. It also discussed the failure to appear on March 24, although this was not singled out. The return date on this order was April 15, 1980. Repeated attempts at personal service failed and the district court continued the matter until May 27, 1980, and issued yet another order to show cause why he should not be held in both civil and criminal contempt. The order specified that constructive service be made by publication and certified mail. On May 27, when Rylander did not appear, the district judge issued a bench warrant for his arrest.

The district court appointed counsel to represent Rylander, because Rylander had not obtained counsel on his own and the district court believed it appropriate that he be represented by counsel, even though Rylander refused to complete a financial disclosure statement on fifth amendment grounds. Rylander discharged two court-appointed lawyers, believing them to be ineffective and less than zealous in their representation of him. He then filed a demand for appointment of "competent and effective counsel." The district judge told Rylander that his choices were representing himself, obtaining counsel of his choice, or appearing with one of the court-appointed lawyers. Although Rylander would not explicitly waive his right to counsel, he chose to represent himself in subsequent proceedings and the district court found he had "knowingly, intelligently, and competently waived counsel."

Rylander demanded a jury trial. This was denied because the district court determined that if a penalty were imposed it would not exceed six months' imprisonment or $500. Rylander also moved to disqualify the district judge, alleging bias and prejudice. This motion also was denied by the district court.

On October 8, 1980, the district court conducted a combined non-jury trial on the civil and criminal contempt charges. The Government's evidence showed that Rylander had been president of both Rylander and Company, Realtors, Inc. and Affiliated Investments and Mortgage Company from 1972 until 1977. He had filed corporate income tax returns for those years that identified him as the president of both corporations. In addition, he had opened bank accounts, written checks, signed correspondence, executed contracts, and filed applications with government agencies on behalf of both business entities, all prior to 1980. The Government offered no direct proof that the documents sought were in existence and in Rylander's possession or control on or after January 15, 1980. It contended that such proof was unnecessary because the evidence presented created an inference that the documents existed and that Rylander possessed them. Rylander, appearing *in propria persona,* introduced no evidence and refused to participate in the proceedings, stating only that the district judge was disqualified from hearing the case because the judge was personally biased against him.

The district court found Rylander guilty of criminal contempt for his failure to produce the documents as required by the order of January 15 enforcing the summonses and also guilty of criminal contempt for his failure to appear at the hearing to show

cause on March 24. In addition, Rylander was held in civil contempt for his continued failure to produce the documents.

In this appeal, Rylander challenges his criminal contempt convictions.

## II

### CRIMINAL AND CIVIL CONTEMPT

■ The difference between criminal and civil contempt is not always clear. The same conduct may result in citations for both civil and criminal contempt. *United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1946). The distinction between the two forms of contempt lies in the intended effects of the court's punishment. *United States v. Asay,* 614 F.2d 655, 659 (9th Cir.1980). Punishment for civil contempt is intended to be either coercive or compensatory, whereas the purpose of criminal contempt punishment is punitive.

We explained the difference in *United States v. Powers,* 629 F.2d 619, 627 (9th Cir.1980):

Punishment for civil contempt is usually considered to be remedial. The penalty is designed to enforce compliance with a court order. *In re Timmons,* 607 F.2d 120, 124 (5th Cir.1979). For that reason civil contempt punishment is conditional and must be lifted if the contemnor obeys the order of the court. *Shillitani v. United States,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). The term of punishment for civil contempt cannot extend beyond the trial proceedings since at the termination of the trial the contemnor's actions can no longer be purged. *Shillitani, supra* at 371, 86 S.Ct. at 1536.

Criminal contempt is established when there is a clear and definite order of the court, the contemnor knows of the order, and the contemnor willfully disobeys the order. *Chapman v. Pacific Tel. & Tel. Co.,* 613 F.2d 193, 195 (9th Cir.1979). The penalty is punitive in nature. It serves to vindicate the authority of the court and does not terminate upon compliance with the court's order. The punishment is un-

conditional and fixed. *In re Timmons, supra* at 124.

At the conclusion of his trial, Rylander was ordered incarcerated until he produced the summoned records or testified as to why he could not do so. The purpose of this order was coercive, so the indefinite incarceration was for civil contempt. This order was ultimately upheld by the Supreme Court. *Rylander I,* —— U.S. at ——, 103 S.Ct. at 1554.

Rylander was also sentenced to six months' imprisonment, to commence upon his release from the civil contempt incarceration, for disobeying the district court's order to produce the summoned documents, and to an additional six months' imprisonment, to run concurrently with the first six month sentence, for failing to appear at the March 24, 1980 show cause hearing. These two concurrent six month sentences were punitive in nature, imposed to vindicate the authority of the court, and therefore were punishment for criminal contempt. It is these two criminal contempt citations with which we are concerned here.

## III

### SUFFICIENCY OF THE EVIDENCE

Of the many grounds for reversal urged by Rylander, we turn first to his claim that the evidence was insufficient. We address this issue first, because if there was not sufficient evidence to support a conviction, the fifth amendment's double jeopardy clause bars a retrial. *Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978).

### A. Failure to Produce

■ Rylander's criminal contempt conviction for failure to produce stems from his failure to turn over the summoned documents to the IRS on February 4, 1980, as required by the district court's order of January 15, 1980. A federal court may punish, as criminal contempt of its authority, disobedience or resistance to its lawful order. Criminal contempt is established when it is shown that the defendant is

aware of a clear and definite court order and willfully disobeys the order. *United States v. Powers,* 629 F.2d at 627. The primary issue in this case is whether the evidence was sufficient to establish, beyond a reasonable doubt, that Rylander willfully disobeyed the court's order of January 15.

█ If Rylander lacked the ability to comply with the court's order, he could not be found to have willfully violated it. Thus, inability to comply with the court's order would be a complete defense. *See United States v. Joyce,* 498 F.2d 592, 596 (7th Cir.1974). It is therefore relevant whether the summoned documents existed and were within Rylander's possession or control between January 15, 1980, the date the district court issued its order, and February 4, 1980, the date upon which the order required production.

█ The Government contends that, because Rylander did not claim lack of possession at the summons enforcement proceeding, the doctrine of *res judicata* precludes the argument that the documents did not exist or were not within his possession or control. Although in *Rylander I* the Supreme Court held that under *Maggio v. Zeitz,* 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948), the prior proceeding did preclude Rylander's lack of possession defense to the civil contempt citation, —— U.S. at ——, 103 S.Ct. at 1552, the same is not true of the criminal contempt citation. The type of issue preclusion approved in *Maggio* was intended to apply only in civil contempt proceedings. 333 U.S. at 68, 68 S.Ct. at 407. It is an elementary principle of issue preclusion that it may only be asserted where the burden of proof as to that issue is no greater than it was in the prior proceeding where the issue was decided. C. Wright, A. Miller, & E. Cooper, 18 *Federal Practice and Procedure* § 4422 (1981); *see One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 235, 93 S.Ct. 489, 492, 34 L.Ed.2d 438 (1972) (per curiam). In the criminal contempt proceeding, the Government was required to

prove all elements of the offense, including an ability to comply with the order, beyond a reasonable doubt. The Government's burden was substantially less in the summons enforcement proceeding. Thus, even if possession or control was established in the summons enforcement proceeding, the Government cannot assert preclusion as to that issue in the criminal contempt proceeding.

There was evidence in the record that Rylander was unable to comply with the order because the documents either did not exist or were not within his possession or control.[2] Two witnesses testified as to Rylander's February 4 appearance at the IRS office, where Rylander stated that he was unable to produce the summoned documents because he did not have them. In addition, the three-page statement dictated by Rylander and filed by his son, Edwin, at the March 24 hearing was admitted into evidence. In that statement Rylander said that he had no such documents and was therefore unable to produce them as ordered on February 4. This evidence, even though introduced by the Government, created a factual question as to Rylander's ability to comply with the January 15 order.

The Government tried to prove that Rylander was able to produce the documents by showing that he had previously been the principal officer of the two corporations. The Government's evidence showed that Rylander had been president of the two corporations between 1972 and 1977. It also showed that he had performed various acts on behalf of the corporation prior to 1980. There was no direct evidence that the documents sought were in existence and in Rylander's possession or control on or after January 15, 1980.

█ Rylander's status as a former corporate officer, particularly in light of his claim that he did not possess or control the documents, is not sufficient to establish beyond a reasonable doubt his ability to pro-

---

**2.** This evidence does not include Rylander's "Oath in Purgation of Contempt," which was filed after Rylander had been sentenced. This document was not part of the record upon which the district court based its judgment.

duce the summoned documents in January 1980. The inferences that may arise from his past relationship with the corporation are simply not strong enough on the facts of this case to establish beyond a reasonable doubt an ability to comply with the court's order. Accordingly, we hold that there was not sufficient evidence to convict Rylander of criminal contempt for his failure to produce the summoned documents.

### B. Failure to Appear

Rylander's second criminal contempt conviction results from his failure to appear at the March 24, 1980 show cause hearing. Following Rylander's failure to comply with the district court's January 15, 1980 order to produce the summoned documents, the district court ordered him to appear on March 24, 1980, and show cause why he should not be held in contempt. When the United States Marshal's repeated efforts to personally serve the order on Rylander were unsuccessful, the order was served by mail pursuant to Rule 5(b) of the Federal Rules of Civil Procedure. Rylander did not appear at the March 24 hearing, but his son filed a three-page statement dictated by Rylander over the telephone from Oregon. As we have previously discussed, knowledge or notice of the court order in question and a willful disobedience of that order are the essential elements of criminal contempt. *United States v. Powers,* 629 F.2d at 627. Disobeying an order to appear at a show cause hearing, like disobedience to any other court order, can result in a criminal contempt conviction. *See Douglass v. First National Realty Corp.,* 543 F.2d 894, 897 (D.C.Cir.1976). Contrary to Rylander's assertion that he could not be held in contempt because he was not personally served with the order, actual knowledge of the order is all that is required; neither formal notice nor personal service is necessary to support a conviction for criminal contempt. *United States v. Baker,* 641 F.2d 1311, 1316–17 (9th Cir.1981). Rylander concedes that his March 23, 1980 letter to the court requesting a continuance is proof of his actual knowl-

edge of the order to appear on the following day. He asserts, however, that the letter indicated his good faith willingness to comply with the court order. The inquiry, therefore, is whether he acted willfully in failing to appear on March 24.

There is sufficient evidence in the record to support the district court's conclusion that Rylander's failure to appear was willful. While a good faith effort to comply with the order is a defense to a charge of contempt, "delaying tactics or indifference to the order are not." *United States v. Baker,* 641 F.2d at 1317. The record is replete with evidence of Rylander's disregard for the court's attempts to enforce its orders. Despite at least six attempts to personally serve him with show cause orders and repeated service by mail and publication, Rylander never appeared before the district court. It is undisputed that Rylander was aware of the March 24 show cause hearing. His failure to appear at any time after that date belies his contention that he had a good faith willingness to comply. Indeed, the district judge was required to issue a bench warrant to obtain Rylander's presence before the court.

We conclude that the evidence was sufficient to convict Rylander of contempt for his failure to appear at the March 24 hearing.

### IV

### PROCEDURAL ISSUES

Because we have concluded that there was insufficient evidence to support the contempt conviction for failure to produce the summoned documents, and a retrial on that charge is therefore barred, we discuss the other grounds for relief urged by Rylander only in relation to his conviction for failure to appear at the March 24 show cause hearing.

### A. Combining Criminal and Civil Contempt Trials

 Rylander argues that the district court improperly combined his trials on the

civil and criminal contempt charges. Jointly trying civil and criminal contempt charges is not a ground for reversal unless it is "shown to result in substantial prejudice." *United States v. United Mine Workers,* 330 U.S. at 299–300, 67 S.Ct. at 698–99. Rylander has failed to demonstrate such prejudice. None of the safeguards to which he was entitled as a criminal defendant was compromised. We therefore do not reverse on this ground.

 Although combining the civil and criminal trials in this case was not reversible error, such joint trials entail problems and hazards that lead us to think it would usually be wiser to try the civil and criminal charges separately. There are many safeguards applicable in a criminal contempt proceeding, such as the right to a jury trial in some cases, the right to counsel, the right not to take the witness stand, and the "beyond a reasonable doubt" burden of proof, which do not apply in a civil contempt proceeding. These differences create unforeseen problems when civil and criminal contempt charges are tried jointly. Thus, although it was not reversible error here, we do not endorse the practice of trying civil and criminal contempt charges jointly.

### B. Recusal

 The district court properly rejected Rylander's request for recusal pursuant to Rule 42(b) of the Federal Rules of Criminal Procedure and 28 U.S.C. § 144. The contempt charges did not involve criticism of the trial judge as required for recusal under Rule 42(b). Rylander's pretrial affidavits contain no "specific fact allegations tending to show personal bias stemming from an extrajudicial source," as required by 28 U.S.C. § 144. *United States v. Sibla,* 624 F.2d 864, 868 (9th Cir.1980). The record indicates that the district judge conducted these proceedings in a fair and impartial manner. Indeed, he showed unusual patience and tolerance.

### C. Notice of the Charge

 Rylander contends that the notice of the contempt charge for failure to appear did not comply with Rule 42(b) of the Federal Rules of Criminal Procedure. Rule 42(b) requires that the notice "state the essential facts constituting the criminal contempt charged and describe it as such." The "simple notice" required by Rule 42(b) is less rigid than the requirements for a formal indictment or information, but it must still apprise the defendant of the basis for the contempt charge. *United States v. Robinson,* 449 F.2d 925, 930 (9th Cir.1971). Although the notice need not contain the word "criminal," there must be some indication that the defendant is aware that a criminal contempt is charged. *United States v. United Mine Workers,* 330 U.S. at 297, 67 S.Ct. at 697.

 The clearest notice of the charge against Rylander was contained in the Government's pretrial brief, filed nine days before trial, which explicitly argued that he should be found guilty of criminal contempt for his failure to appear on March 24. Somewhat less clear was the show cause order, which initiated the contempt proceeding and inquired as to why Rylander should not be held in "criminal contempt of court and punished therefor." That order referred to the Government's petition, which, in its recitation of why Rylander should be ordered to show cause why he should not be held in contempt, included a statement of his failure to appear at the March 24 hearing in violation of the district court's order.

Regardless of whether the show cause order and the Government's petition, standing alone, constituted sufficient notice, the Government's pretrial brief sufficiently apprised Rylander of the charges to meet the requirements of Rule 42(b). *See United States v. Robinson,* 449 F.2d at 930.

### D. Right to Counsel

Rylander argues that he was denied his sixth amendment right to counsel in the district court. The district court appointed an attorney to represent Rylander and, after Rylander discharged the attorney, appointed a second attorney, who was also

subsequently discharged by Rylander. Rylander then requested that the district court appoint an attorney of Rylander's choosing. Instead, the district court gave Rylander the choice of being represented by one of the two lawyers who had previously been appointed, hiring counsel himself, or representing himself. Rylander chose to represent himself, and was permitted to do so after the district court found that he had "knowingly, intelligently, and competently waived counsel."

Although a criminal defendant has a right to represent himself, *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975), the decision to do so must be made knowingly and intelligently. *United States v. Harris,* 683 F.2d 322, 324 (9th Cir.1982). "Before waiving his right to counsel, the defendant must be aware of the nature of the charges and the possible penalties, as well as the dangers and disadvantages of self-representation in a complex area where experience and professional training are most helpful." *Id.* The preferred procedure is for the district judge to ensure that a waiver is made knowingly and intelligently by discussing with the defendant, on the record, the nature of the charges, the possible penalties, and the dangers of self-representation. *Id.* It is an unusual case where, absent such a colloquy, a knowing and intelligent waiver of counsel will be found. *Id.*

Although the district judge exhibited great patience with Rylander on the matter of Rylander's representation, he neglected to discuss with Rylander the nature of the charges and the possible penalties prior to accepting the waiver of counsel. Furthermore, the record does not indicate that Rylander understood the nature of the charges or the possible penalties at the time he waived counsel. In numerous documents filed in the district court, Rylander claimed not to understand the charges against him. It may well not have been clear to a lay person from the Government's petition and the orders to show cause that Rylander's failure to appear March 24 would be the basis for a contempt charge. It is quite

possible that this was not clear to Rylander until the Government filed its pretrial brief, after Rylander had waived counsel. There is also no indication in the record that Rylander understood the possible penalties at the time he waived counsel. The district judge did not discuss the penalties that might be imposed until he took up the motion for a jury trial, after Rylander's waiver of counsel.

Because the record does not indicate that Rylander understood the nature of the charges or the possible penalties at the time he waived counsel, we reverse the conviction and remand for a new trial.

*E. Jury Trial*

Finally, Rylander argues that he had a constitutional right to a jury trial which was abridged in the district court.

There is a sixth amendment right to a trial by jury in serious, but not petty, criminal contempt cases. *Bloom v. Illinois,* 391 U.S. 194, 198, 88 S.Ct. 1477, 1480, 20 L.Ed.2d 522 (1968). Whether a criminal contempt is serious or petty is determined by the severity of the penalty authorized. *Frank v. United States,* 395 U.S. 147, 149, 89 S.Ct. 1503, 1505, 23 L.Ed.2d 162 (1969). If the contempt is charged under a statute that authorizes a maximum penalty greater than $500 or six months' imprisonment, there is a right to a jury trial regardless of the penalty actually imposed. *Muniz v. Hoffman,* 422 U.S. 454, 476–77, 95 S.Ct. 2178, 2190–91, 45 L.Ed.2d 319 (1975). Absent a specific statutory authorization of a maximum penalty, the severity of the penalty actually imposed determines whether the contempt was serious or petty. *Frank v. United States,* 395 U.S. at 149, 89 S.Ct. at 1505. Where no maximum penalty is specified, a contemnor may be sentenced to up to six months' imprisonment and fined as much as $500 without a jury trial. *Id.* at 150, 89 S.Ct. at 1506; *United States v. Hamdan,* 552 F.2d 276, 280 (9th Cir.1977).

The two contempt charges in this case were tried jointly. The contempt charge for failing to produce the summoned

documents arose from Rylander's refusal to comply with a summons issued pursuant to 26 U.S.C. § 7602. Punishment for disobedience to a section 7602 summons is specifically controlled by 26 U.S.C. §§ 7604(b) and 7210, which authorize a maximum penalty of $1,000 or one year of imprisonment or both. Thus, any criminal contempt charged as a result of disobedience to a section 7602 summons is a serious offense and carries with it the right to a jury trial. Rylander's request for a jury trial therefore should have been granted.

If Rylander had been tried only on the second contempt charge, he would not have had a right to a jury trial. That charge, for failure to appear on March 24, was brought under 18 U.S.C. § 401(3).[3] That statute does not specify a maximum penalty. There was therefore no right to a jury trial because he was neither sentenced to more than six months' imprisonment nor fined more than $500.

Because we reverse Rylander's contempt conviction for failure to appear on another ground, we do not reach the question of whether, because that charge was tried jointly with the failure to produce charge, the failure to afford him a jury trial would require reversal. On remand, since he cannot be retried on the failure to produce charge, Rylander will not be entitled to a jury trial so long as he is not sentenced to more than six months' imprisonment or fined more than $500.

## V

## CONCLUSION

We reverse Rylander's contempt conviction for failure to produce because the evidence was insufficient. We reverse the contempt conviction for failure to appear because Rylander's sixth amendment right to counsel was violated. The case is remanded for further proceedings on the failure to appear contempt charge.

REVERSED and REMANDED.

---

3. Unlike the charge for failing to produce the summoned documents, this charge could not have been brought under 26 U.S.C. § 7604(b),

POOLE, Circuit Judge, dissenting.

This case is a conspicuous illustration of the capacity of a determined individual literally to thumb his nose at a district court and later escape being called to account because judges are unable to avoid tripping over themselves with legal technicalities. Try as I have, I simply cannot agree that this defendant, whose history of utter defiance of legal process and court orders, is spread across a clear record, is again to be bailed out on the grounds that he did not act knowingly and intelligently when he rejected two court appointed lawyers, tried to insist that a personally-known lawyer be appointed at public expense and, denied that luxury, elected to represent himself. In an earlier phase of this same case the defendant became the beneficiary of judicial technicality when this circuit reversed the trial court's adjudication of civil contempt. *United States v. Rylander*, 656 F.2d 1313 (9th Cir.1981) (*Rylander I*). The Supreme Court overruled and reversed us and reinstated the judgment. *United States v. Rylander*, —— U.S. ——, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983) (*Rylander II*). We are about to reward him again.

I can agree that Rylander was not shown sufficiently to have actually had possession of the disputed corporate records during the critical period although he was the president of the corporation. The presumption that because he directed the corporation he personally had possession of the records, is inadequate.

But on March 24, he deliberately failed to appear in response to the court's order to show cause. He was tried on that charge and the majority concludes that he had notice of both the duty to appear, the nature of the proceeding scheduled, and the ability to have appeared. When he was finally brought in involuntarily, the court proceeded to hear an ordinary contempt case. The judge appointed a lawyer to represent the defendant. Rylander dis-

because that section only authorizes punishment for disobedience to the requirements of summonses.

charged him. The judge appointed a second lawyer to defend him. Rylander discharged that lawyer. Clearly, Rylander could keep up that act indefinitely and as clearly, might be able indefinitely to fend off any trial. The judge then gave him his option: take either of the first two lawyers or go it alone.

Rylander went it alone and was convicted. For two reasons, both of which I believe are wrong, the majority has set aside this conviction. First the majority says that the court did not explain to Rylander the pitfalls of being his own counsel. It cites cases such as *United States v. Harris,* 683 F.2d 322 (9th Cir.1982) as its authority. The facts in *Harris* are vastly different. Harris was tried under 26 U.S.C. § 7203 for failing to file income tax returns for three years. It was a jury trial and he represented himself. He knew of his right to counsel but twice stated that he wished to represent himself. He did not know anything about a jury trial, nothing about challenges, nothing about cross-examination and making objections. The *Harris* opinion states that his "opening" statement was largely a rather meaningless objection to the law and proceedings. A § 7203 charge has many elements calling for learning and skill in presentation. An untutored layman is not generally equipped to handle the intricacies of a jury trial, and especially not in a criminal tax case.

But the only similarity to this case is that Rylander had refused to appear when ordered by the court in a proceeding which was merely ancillary to a tax trial. Since he was notified to appear and there is no reason shown why he did not appear, his case would seem well described by the language in *Harris* that

> "this court has, however, held that a failure [of the district court to describe all the elements of waiver] will not, in every case, necessitate reversal."

Whatever defense Rylander chose to offer, he had to have a valid reason for not appearing when he knew he should. Rylander presented no excuse and took no part in the proceedings except his effort to disqual-

ify the trial judge. His adamant refusal to comply with any order of the court was part of a pattern. I find it difficult to comprehend how we expect obedience to valid court orders if we tolerate willful and sustained contumacy. Rylander is shown as a crafty and deliberate person. The rejection of counsel by this corporation president cannot be called the decision of a novice. That principle is intended to protect the unwary, not to ratify deliberate disobedience to a simple and uncomplicated order to come to court at a certain time.

## JURY TRIAL

The majority holds that Rylander was entitled to a jury trial because that the contempt charge arose from his refusal to comply with a summons issued by the Internal Revenue Service pursuant to 26 U.S.C. § 7602. The majority reasons that disobedience to § 7602 is punished under § 7604(b) and § 7210, authorizing a misdemeanor penalty of as much as $1,000 or a year's imprisonment, or both. Therefore, says the majority, "any criminal contempt charged as a result of disobedience to a § 7602 summons is a serious offense and carries with it the right to a jury trial." (Op. p. 16). The majority is confused. He was not in contempt for disobeying a summons but for disobeying a court order.

The Internal Revenue code sections make it a crime to disobey a summons. Congress has established procedures to compel compliance with IRS' summons to appear before that agency and produce records and/or give testimony. There are defenses to that requirement. *See United States v. Rylander,* —— U.S. ——, 103 U.S. 1548, 75 L.Ed.2d 521 (1983) (passim), which can be asserted in the agency proceedings or in any court proceedings convened for the purpose of enforcing the obligation. But when a court issues an order or other process to a person for the purpose of bringing him into court where his defenses or mitigation may be heard, the court is invoking its judicial power, and even if the entire world knows that the defendant has a perfect and complete defense to the summons itself, he still

must come. If he refuses, it is not merely a disappointment to the agency's mission, it is disobedience to valid court process. This, as I thought no one disputed, is a plain act of contempt under 18 U.S.C. § 401, and is initiated by the court on motion, or *sua sponte,* under Rule 42, Fed.R.Crim.P., or on application of the United States Attorney or an attorney appointed by the court for that purpose. In such a proceeding, the agency has no standing except as the court may direct, for the purpose is not remedial for the agency's benefit, but punitive to vindicate the court's own dignity.

The district court here denied Rylander a jury trial on such authorities as *Muniz v. Hoffman,* 422 U.S. 454, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975). In its view, however outrageous Rylander might be in refusing to respond to the *court's* process, he still was liable to punishment only under the tax statutes. This is at odds with both logic and policy. The district court advised Rylander that he would be subject only to a fine of $500 or six months confinement, or both. That is the limit of a petty offense. Petty offenses do not carry the right to jury trial. Rylander's sentence was within those bounds. I dissent from the majority's reversal and its awarding him a jury trial.

Finally, although it may be only advisory dictum and district judges may wish to accept the advice with caution and reservations, I do not associate with the majority's teaching that it is bad practice to combine civil and criminal contempt hearings. Combined hearings are common in district court contempt cases, of which many arise in the course of labor case injunctions. Because they involve almost the identical evidence, and, especially in labor cases, because of the need to bring a speedy end to labor disputes, it would be burdensome on the parties and expensive charges against judicial resources to require two trials with the same evidence and witnesses. The majority supplies no empirical basis for its announced preference and therefore I would belabor it no further.

Rylander has once again, as the Supreme Court said in reinstating his civil contempt adjudication, played "a game of hare and hounds." *Rylander I,* 103 S.Ct. at 1555 (quoting from *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884). It is now time for an end.