**UNITED STATES of America, Plaintiff–Appellee,**

v.

**C. Scott FLEWITT, and B. Todd Flewitt, Defendants–Appellants.**

**No. 86–5018.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1988.

Decided May 10, 1989.

Alan M. Caplan, Bushnell, Caplan & Fielding, San Francisco, Cal., for defendants-appellants.

Anita S. Dymant, Asst. U.S. Atty., Major Frauds Unit, Crim. Div., Los Angeles, Cal., for plaintiff-appellee.

Before HUG, BRUNETTI and KOZINSKI, Circuit Judges.

HUG, Circuit Judge:

Scott Flewitt and his sons, Todd Flewitt and Michael Flewitt, were indicted for 12 counts of mail fraud in violation of 18 U.S.C. § 1341. Scott Flewitt was convicted of 11 counts, Todd Flewitt of 7 counts, and Michael Flewitt was acquitted. The principal issue in this appeal is whether the constitutional rights of Scott and Todd Flewitt to self-representation were denied. We hold that they were and therefore reverse and remand for a new trial.

The appellants were doing business under the name of Concept Marketing International ("CMI"). This was a multilevel marketing company designed to sell a variety of household products. A prospective investor paid a membership fee. There were two ways that the investor could profit from involvement in CMI. He could receive commissions from the sales of products; he could also receive bonus payments from other investors he brought into the company and additional bonuses from investors brought in by those he had recruited.

At the initial arraignment, appellants were both represented by the same retained counsel. Thereafter, the retained counsel was relieved and separate counsel were appointed for each defendant. A superseding indictment, which made minor changes, was filed. A trial date was set for April 23, 1985. At a pretrial status conference on April 15, 1985, the appellants moved for appointment of new counsel because of a conflict. The appellants contended this was a complex case requiring counsel to review many documents in a warehouse in Pasadena, California. They contended there was no way their counsel could be ready for trial in a week. Counsel confirmed the conflict over the examination of these business records. In the alternative, the appellants moved to represent themselves. The court denied the request for discharge of counsel and self-representation because the appellants would not be ready for trial.

The appellants renewed their request on April 23, stressing the importance to the defense of the documents in Pasadena, and stating,

> [T]he most important part of our case is in the documentation. The jury must see the proof of our words, in other words. That proof is in large quantity and lies in a warehouse belonging to the postal department in Pasadena. Because defense counsel has not obtained a court order to make this documentation available to both counsel and defendants at the same time, we can't show the steps taken in the course of our business to illustrate for the jury that it was without criminality.

The district court granted the appellants' request to represent themselves and continued the trial for three months to allow them time to prepare for trial. Advisory counsel and an investigator were appointed to assist in trial preparation. There then ensued a series of requests by appellants, who were in custody, to be transported to the warehouse in Pasadena to go through the records. Appellants contended that the investigator and advisory attorney would not be able to make sense out of the records without the appellants sorting and organizing them because they were in disarray after the Government had seized them. These motions were denied. The Government applied *ex parte* for an order to transport appellants to the courthouse lockup to review certain original discovery

materials in the possession of the Government. The appellants were transported pursuant to the order that was issued, but they refused to look at the discovery made available by the Government. The appellants renewed the motion to be transported to the Pasadena warehouse and sought a continuance because they had not been granted access to the records. The trial was continued to October 8. The appellants also requested disqualification of the judge, which request was denied after a hearing before a different district judge.

At a status conference on September 30, 1985, one week before the scheduled trial date, the appellants persisted with their request to be taken to review the documents. The judge pointed out the difficulty and the number of hours of the marshals's time that would be required. Scott Flewitt replied: "Your honor, we are not asking for hundreds of hours, really. We are asking to be taken to the records, to categorize them at least so someone can find what we are requesting." The judge requested an offer of proof of what documents they needed. They stated they needed financial records, business records, and customer files. The judge then terminated the appellants' pro se status stating:

> For reasons known best to yourselves, you are not ready for trial and you will not get ready to trial nor will you do the necessary preparation in order to be ready for trial....
>
> But the trial is going to go forward. I am going to find that you are incapable of effectively representing yourselves. You are bright individuals. I don't know if it is the complexity of the case or whether you are, as I suspect, maybe attempting to make a record that will bring about a successful appeal.
>
> But I am going to rule that you are not capable of further self-representation. I am going to terminate your representation of yourselves, and I am going to re-appoint standby counsel. That order is effective forthwith.

The appointed counsel for each of the appellants proceeded to take over the trial responsibilities. The trial began on October 8, 1985. The appellants were convicted after a jury trial and each sentenced to 15 years of incarceration, and a consecutive 5–year term of probation.

■ The dissent argues that the defendants did not make an unequivocal demand to proceed pro se. The Government does not advance this argument on appeal and, thus, may have waived that argument. In any event, it is our view that the Government did not raise this issue on appeal because it lacks merit. The court conducted an extensive hearing on September 9, 1985, the express purpose of which was to determine whether the defendants wished to accept the assistance of the counsel the court had appointed for them or to proceed pro se. The district judge had appointed counsel that he had found to be competent and informed the defendants that he did not intend to substitute new counsel. The Flewitts contended that these attorneys were ineffective because they had not done things the Flewitts thought should have been done. The court had found, however, that the counsel were proceeding competently and effectively and that any difficulty was due to the Flewitts' lack of cooperation.

The court asked numerous direct questions making it very clear that the defendants had to make a specific choice. For example, the court stated:

> You have a right to counsel and you have a right to represent yourself. Which of those two alternatives do you choose now?

(T.R. 150.) The response of the two Flewitts was that they wished to represent themselves, as the choice was put to them, but that they still contended that the failure to appoint new counsel for them was a denial of effective assistance of counsel. As between the choice of accepting the continued services of the counsel that had been appointed for them or representing themselves, they chose the latter. The assistant U.S. attorney expressed some concern. The court then stated:

> I don't agree with you [the assistant U.S. attorney] that it is not a valid waiver if they have only waived because they don't

like their other attorney. I think it is a valid waiver if they know what they are doing.

If they understand they have the right to counsel [and] they reject the offer of counsel by the court. They are mentally able to represent themselves. They choose to represent themselves. I don't think the motive is that important.

(T.R. 152–53.) We agree with this conclusion of the district court. The district court then made a specific finding:

As of right now I think you are capable of representing yourselves, I believe and I find that you have made an effective waiver of your 6th amendment right to counsel, and there is no reason at the present time why you should not represent yourself.

(T.R. 155.)

The dissent cites to earlier portions of the transcript of the hearing (T.R. 133, 149–154), in which the Flewitts were expressing that the denial of the counsel of their choice was the reason they were choosing to proceed pro se. However, after all the discussion, the finding of the court was as expressed above, that they had made an effective election to proceed pro se. There is no indication in the record that the district court at any time made a contrary finding. The district judge did not terminate the *pro se* status because the election to so proceed was equivocal (nor does the Government even advance that argument on appeal). Rather, the court found that they had made an effective election to proceed *pro se*, but terminated it at the status conference on September 30, 1985, for the reason that they were not prepared to go to trial and were not capable of representing themselves. This is clearly expressed in the quotation from the transcript (T.R. 198) on page 4, of this opinion. We are therefore concerned in this appeal with the reason for the termination of the right of self-representation that was unequivocally elected. This was based not on any equivocation in election but on the conduct of the defendants thereafter in failing to make adequate preparation for trial.

The conduct of the defendants was no doubt exasperating, and the district judge displayed admirable patience in granting various requests of the defendants including requests for continuances. However, the issue before us is whether this conduct justified the district court in terminating the defendants' constitutional right of self-representation.

In *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court stated in no uncertain terms that the Sixth Amendment confers the right to self-representation at trial. The Court explained:

The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense.... The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

*Id.,* 95 S.Ct. at 2533.

■ The Government contends that the defendants' discovery requests were unreasonable and that they failed to utilize discovery the Government voluntarily provided. However, the defendants' constitutional right of self-representation may not be abrogated because they were uncooperative with the Government in utilizing discovery opportunities or in making vague and poorly formulated motions. This may be poor defense tactics, and it well could have resulted in adverse rulings. However, if they chose to represent themselves and, after the reasonable opportunities afforded by the court, chose tactics that left them poorly prepared to defend, that was their choice to make.

The district judge terminated the pro per status of the appellants because they were "not capable of further self-representation." It was not that they had been or would be disruptive; it was that they had not and would not properly prepare for trial. The judge did not indicate that they had been contemptuous or failed to obey the rulings of the court.

■ The Government contends that this constitutes disruption of the trial and thus justifies revocation of pro per status. It relies on footnote 46 in the *Faretta* opinion, which states:

We are told that many criminal defendants representing themselves may use the courtroom for deliberate disruption of their trials. But the right of self-representation has been recognized from our beginnings by federal law and by most of the States, and no such result has thereby occurred. Moreover, the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. *See Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 [1970]. Of course, a State may—even over objection by the accused—appoint a "standby counsel" to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary. [Citation omitted.]

The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law. Thus, whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of "effective assistance of counsel."

*Id.,* 95 S.Ct. at 2541 n. 46. This footnote speaks of disruption in the courtroom. Pretrial activity is relevant only if it affords a strong indication that the defendants will disrupt the proceedings in the courtroom. The Supreme Court never suggested that the defendant's right to self-representation could be terminated for failure to prepare properly for trial. Rather, it stated that "[t]he right of self-representation is not a license to abuse the dignity of the courtroom." *Id.* The Court was concerned only with the possibility of defendants "[using] the courtroom for deliberate disruption of their trials." *Id.*

Indeed, the case cited by the Court in the footnote, *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), merely held that a defendant may be removed from the courtroom during his own trial when he "engages in speech and conduct which is so noisy, disorderly, and disruptive that it is exceedingly difficult or wholly impossible to carry on the trial." *Id.* at 338, 90 S.Ct. at 1058. The Court noted in that case, "It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard *in the courtroom* of elementary standards of proper conduct should not and cannot be tolerated." *Id.* at 343, 90 S.Ct. at 1061 (emphasis added).

■ In sum, the footnote in *Faretta* states only that a defendant's right to self-representation does not allow him to engage in uncontrollable and disruptive behavior in the courtroom. We do not construe the footnote to mean that a defendant's Sixth Amendment right to self-representation—so vigorously upheld by the Supreme Court in *Faretta*—may be extinguished, as it was in this case, due to the defendant's lack of preparation prior to trial. The Court expressly denies in the footnote that the right of self-representation is "a license not to comply with relevant rules of procedural and substantive law." *Faretta,* 95 S.Ct. at 2541 n. 46. There is no indication that a failure to comply with such rules can result in a revocation of pro se status. Instead, the footnote indicates the Court's meaning to be that a defendant cannot claim "ineffective assistance of counsel" flowing from his failure to follow the rules of procedure or from his misinterpretation of the substantive law. If he chooses to defend himself, he must be content with the quality of that defense.

■ Of course, a request for self-representation need not be granted if it is intended merely as a tactic for delay. *United States v. Smith,* 780 F.2d 810, 812 (9th Cir.1986); *Armant v. Marquez,* 772 F.2d 552, 555 (9th Cir.1985), *cert. denied,* 475 U.S. 1099, 106 S.Ct. 1502, 89 L.Ed.2d

902 (1986). Moreover, a court may consider events preceeding a motion for self-representation to determine whether the request is made in good faith or merely for delay. *Fritz v. Spalding*, 682 F.2d 782, 784 (9th Cir.1982). Thus, if the district judge determines that the defendants' request is part of a pattern of dilatory activity, the court has the discretion to deny the continuance and require the defendant to proceed to trial on the scheduled date either with the counsel designated or pro se. A defendant proceeding pro se, or requesting to proceed pro se, is subject to the same good faith limitations imposed on lawyers, as officers of the court.

 Pro se status does not excuse a criminal defendant from complying with the procedural or substantive rules of the court. *Faretta*, 422 U.S. at 835 n. 46, 95 S.Ct. at 2541 n. 46. A defendant who knowingly and intelligently assumes the risks of conducting his own defense is entitled to no greater rights than a litigant represented by counsel, *United States v. Merrill*, 746 F.2d 458, 465 (9th Cir.1984), *cert. denied*, 469 U.S. 1165, 105 S.Ct. 926, 83 L.Ed.2d 938 (1985), unless the court's duty to liberally construe pro se pleadings is considered an enhanced right. *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)). That obligation is fully satisfied by the appointment of standby counsel, whose presence is intended "to steer a defendant through the basic procedures of trial" and "to relieve the judge of the need to explain and enforce basic rules of courtroom protocol...." *McKaskle v. Wiggins*, 465 U.S. 168, 184, 104 S.Ct. 944, 954, 79 L.Ed.2d 122 (1984). The pro se litigant may, of course, refuse to follow his standby counsel's advice, assuming he even asks for such assistance. That choice, as with all the other strategic decisions made by a pro se litigant, is his own. Having refused this assistance, however, he may not be heard to complain later that the court failed to protect him from his own ineptitude.

 The Flewitts' behavior prior to trial was neither a contemptuous refusal to comply with court orders nor such as to indicate that they would be uncontrollable at trial or abuse the dignity of the courtroom. The district court revoked their pro se status, in large part, because the defendants had not progressed in preparing their defense and had not availed themselves of discovery procedures. The Government seems to contend that the appellants were disruptive because of their continual motions to obtain access to the Pasadena warehouse and their failure to utilize the discovery materials offered by the Government. This is not the kind of disruption meant by the Supreme Court. At most, the defendants simply failed to prepare their defense diligently and made motions for relief to which they may not have been entitled. Had they proceeded to trial pro se, such failure to prepare for trial probably would have worked to their detriment. This, however, is not grounds for retracting their pro se status. The Court in *Faretta* emphasized that the Sixth Amendment does not permit denying a defendant the right to self-representation on the basis that the defendant cannot represent himself with the degree of competence a lawyer might have. The Court stated:

> It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own

defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law."

*Faretta*, 95 S.Ct. at 2540–41 (citation omitted). It is clear from this statement of the Court that the Flewitts' failure to engage in meaningful discovery, their failure to make use of the resources available to them, and their general failure to prepare for trial do not constitute a permissible basis for denying them their right to self-representation.

■■■ Another justification offered for terminating the defendants' pro se status warrants separate comment. The Government places emphasis on the fact that the Flewitts refused to cooperate with or properly utilize advisory counsel, and even ceased communicating with advisory counsel for approximately two months. We do not view this as a justifiable rationale for depriving the Flewitts of their right to self-representation. It indeed would be a paradox to justify revoking a defendant's pro se status on the basis that the defendant failed to consult counsel.

In sum, the district court erred by not allowing the defendants to proceed pro se at trial. *Faretta* does not grant the court free rein to terminate a defendant's pro se status based on pretrial conduct of this sort. The defendants' actions in this case did not rise to the level of obstructionist behavior that threatened the dignity of the courtroom. They simply failed to prepare their defense. That alone cannot justify revoking their constitutional right to self-representation.

REVERSED and REMANDED for a new trial.

BRUNETTI, Circuit Judge, dissenting:

The majority opinion holds that the district court judge violated Scott and Todd Flewitt's constitutional right to self-representation when he revoked their pro se status right before trial. The record shows that the Flewitts had equivocally asserted their right to proceed pro se and used that right to disrupt and delay their trial which was a sufficient reason to terminate their self-representation.

## I.

## STANDARD OF REVIEW

The factual findings of the district court upon which it based its decision to revoke pro se status will not be reversed unless clearly erroneous. *United States v. Smith*, 780 F.2d 810, 811 (9th Cir.1986); *Maxwell v. Sumner*, 673 F.2d 1031, 1036 (9th Cir.1982).

## II.

## RIGHT TO SELF REPRESENTATION

For self-representation, a defendant must (1) "knowingly and intelligently" forego counsel, and (2) request "clearly and unequivocally" to proceed pro se. *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541; *United States v. Harris*, 683 F.2d 322, 324 (9th Cir.1982); *United States v. Kennedy*, 564 F.2d 1329, 1340 (9th Cir. 1977), *cert. denied*, 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (demand to proceed pro se must be unequivocal).

### A. Waiver of Counsel

The preferred procedure to determine whether a defendant has knowingly and intelligently waived his right to counsel is for the district court to discuss in open court with the defendant each of three elements: (1) the nature of the charges against him, (2) the possible penalties, and (3) the dangers and disadvantages of proceeding without counsel. *United States v. Balough*, 820 F.2d 1485, 1487–88 (9th Cir. 1987).

Defendants, having fired their attorney of choice and dissatisfied with court appointed counsel, moved to defend themselves pro se at the status conference a week before the first trial date of April 23, 1985. The district court judge, after ascertaining that none of the defendants had legal experience or had defended themselves before, cautioned them of the disadvantages and dangers of self-representation. He explained that the nature of the

charges against them were "a rather complicated and complex mail fraud case." The court warned them they would have to comply with the court procedures and rules and regulations of the court system. Although the court did not discuss on the record the possible penalties the defendants were facing, they had been advised that their case appeared to be a complicated and complex mail fraud case.

When the district court fails to discuss each of the three elements in open court, we can determine under a limited exception whether the particular facts and circumstances surrounding the case including the background, experience and conduct of the accused show that the waiver was knowing and intelligent despite the absence of a specific inquiry in the record. *Id.* at 1488; *Harris*, 683 F.2d at 324. Finding waiver under the exception is to prevent automatic reversal by the failure of the district court to discuss each of the three elements of the preferred procedure, and should be applied only in rare cases. *Balough*, 820 F.2d at 1488; *United States v. Rylander*, 714 F.2d 996, 1005 (9th Cir.1983); *Harris*, 683 F.2d at 324.

The inquiry focuses on whether the defendant fully understands the "dangers and disadvantages of self-representation" to waive his right to counsel "with his eyes open." *Balough*, 820 F.2d at 1489. The district court here painstakingly explained the dangers of self representation:

> Generally [pro se defendants] are convicted at a higher rate than those who are represented by counsel.... You will be up against ... [a] U.S. District Attorney who is an experienced lawyer and who will show you no mercy. They will be out to convict you and they will do everything that he or she legally can to attain that result.... You will be held to all the standards of lawyers as far as complying with the court procedures and rules and regulations of the court system.

Unlike the trial court in *Rylander*, the court explained and discussed with the defendants the nature of the charges and specific disadvantages with proceeding pro se and they understood them. *Rylander*, 714 F.2d at 1005.

### B. Unequivocal Demand to Proceed Pro Se

It is settled in this circuit that the demand to proceed pro se must be unequivocal. *Armant v. Marquez*, 772 F.2d 552, 555 (9th Cir.1985) citing *Meeks v. Craven*, 482 F.2d 465, 467 (9th Cir.1973).

> The reason an "unequivocal" demand is required is that, otherwise, "convicted criminals would be given a ready tool with which to upset adverse verdicts after trials at which they had been represented by counsel."

*Meeks*, 482 F.2d at 467 (citations omitted). In *Meeks*, when the trial court asked the defendant "You still want to represent yourself?" and the defendant answered "I think I will", the panel found that the demand was a "prototype of equivocation." *Id.*

Here, the posture of the defendants throughout the proceedings indicates they thought they should be represented by counsel. The defendants hired an attorney to represent them when they were first accused of criminal charges. This indicates their awareness that the charges were serious and complex and needed the attention of an attorney. Then, they had a falling out with the attorney and fired him. They proved they were indigent and requested appointed counsel. The court originally appointed joint counsel, then separate counsel for each defendant. When the trial court refused to appoint yet another set of lawyers of the defendants' own choosing, the defendants demanded to proceed pro se. The court allowed them to do so provided they complied with the procedural rules and not use their status to delay the trial. They requested and were appointed advisory counsel. However, later they used a "jailhouse" lawyer instead of the advisory counsel to file a motion to disqualify the judge, and then, blamed the procedural deficiencies in their affidavits on the jailhouse lawyer.

There are numerous other examples of their equivocation: The defendants filed their motion to disqualify the trial judge

the day before they were to go to trial. Part of that motion alleges that the defendants did not properly waive counsel and that they were being denied their *right to counsel*. This prompted the government to request a hearing to determine if defendants properly waived counsel. The court stated:

> You are here because it does appear that you are trying to cloud the record by on the one hand insisting on representing yourself and on the other hand saying that you were not able to represent yourself and that I didn't take a valid waiver from you in your right to counsel and you want counsel.

When the judge questioned the Flewitts about their waiver of counsel they continued to show dissatisfaction with their appointed lawyers, not a desire to proceed pro se.

> Scott Flewitt: However, as I mentioned initially, we had little alternative but to request a pro se status in this particular case because we weren't happy at all with the advice that we were getting from court-appointed counsel.
>
> The Court: You haven't been satisfied with anybody connected with this case, not the four attorneys that have been assigned to represent you, and you had criticisms of the government attorneys, not to mention the court. So you are not happy with anybody that has been assigned to help you in this case or assigned to the case itself.
>
> Scott Flewitt: Well, that is true, your honor. I think the record would support that too.

Later in the discussion between the court and the three Flewitts, Miles Flewitt stated,

> I have a constitutional right to effective assistance of counsel. I have not received that yet ... I have been denied that right so far and I wish to proceed pro se.

The court stated that he had a right to counsel and a right to represent himself and which of these did he prefer? Miles stated, "I choose *at this time* to represent myself." (Emphasis added.) Todd's waiver at the time was also equivocal, "It might be just a simple waiver or there might be other circumstances involved that we have to have time to prepare to argue either orally or in papers; and we are saying that we just weren't given time to present our side of the story." These statements are even more equivocal than the statements the panel in *Meeks* found to be a "prototype of equivocation." *Meeks*, 482 F.2d at 467.

The record clearly shows the defendants were equivocal in their assertion of their pro se right. They had retained counsel, appointed counsel, advisory counsel, jailhouse counsel, and standby counsel. The majority correctly states that the judge took a valid waiver from the defendants at the September 9th hearing. [Opinion at 6] In fact, this was the second time the judge took a waiver from defendants. The September 9th hearing was necessary as the defendants asserted in their motion to disqualify the trial judge that they were denied counsel and that the trial judge took an invalid waiver of counsel from them. At the hearing, they recanted and asserted this wasn't what they meant, and asserted that they still wanted to proceed pro se.

The trial judge attempted to satisfy the defendants demands for right to counsel by appointing first joint then separate counsel, by appointing advisory counsel and by retaining appointed counsel as standby counsel. At the same time, the trial judge attempted to accommodate their requests to proceed pro se by allowing them pro se status at the first trial date of April 23rd, by taking another waiver of counsel at the September 9th hearing (which the majority cites) and finally by offering them the opportunity to gain the discovery they wanted at the September 30th hearing.

All along, the judge recognized that the defendants did not want to proceed pro se. What they wanted, and apparently what they did, was to put error on the record for appeal, no matter how the judge ruled. In fact, the paragraph of the transcript which proceeds the September 9th waiver cited by the majority, the trial judge states:

I know what you are doing with respect to the record. You are trying to fuzz it up so that either way the court rules you can complain to the appellate courts. I will just make the best decision I can and then we will try the case and see what happens.

[Tr. at 155] Later, when he revoked their pro se status during the September 30th hearing (a week before the third trial date), he reiterates this observation:

Based upon your conduct to date in this case I still entertain the strong suspicion that you are really trying to foul up the record of the proceedings in this court so that you have a basis for appeal.

That's what it looks like to me with all of the things that you have said and all of the affidavits that you have filed.

I remember your motion to disqualify this court to Judge Keller recited that you were denied counsel and an ineffective waiver of your right to counsel had been taken and you *desperately need counsel;* and then when I brought you in here and asked you about that, even though you signed those affidavits, you said, "Well, somebody else at the Terminal Island wrote those. That didn't really express our opinion." ...

Well, you have had four attorneys and you are not satisfied with any of them so—... I am going to find that you are incapable of effectively representing yourselves. You are bright individuals. I don't know if it is the complexity of the case or whether you are, *as I suspect, maybe attempting to make a record that will bring a successful appeal.*

But I am going to rule that you are not capable of further self-representation. I am going to terminate your representation of yourselves, and I am going to reappoint standby counsel.

[Tr. at 197–98]. (Emphasis added.) Whether or not the judge took a valid waiver April 23rd or September 9th is irrelevant in the context of the chain of events that lead to the judge's conclusion that the defendants were trying to put error on the record, and never meant to assert their right to proceed pro se. There is no magic moment in these pre-trial proceedings at which we can say, that defendants never really wanted counsel (which they requested and received at least four separate times) or that defendants unequivocally demanded to proceed pro se, which they asserted, then denied then reasserted, all the while in the same breath denouncing their counsel. What the trial judge sensed by their actions in hiring and firing counsel and from what they had said in their motions was that they were trying to put error on the record for appeal. *See United States v. Romero,* 640 F.2d 1014, 1016 (9th Cir.1981) ("Romero was following the scenario used by other tax protestors in discharging appointed counsel and then contending unknowing waiver of counsel."); *Meeks,* 482 F.2d at 467. The court did not err under these circumstances in finding defendants incapable of representing themselves.

### III.

### TACTIC TO DELAY

A defendant may not invoke his right to self representation if it is used as a tactic to secure delay. *Smith,* 780 F.2d at 811; *Fritz v. Spalding,* 682 F.2d 782, 784 (9th Cir.1982). Here, defendants attempted to delay their trial on the merits by asserting their right to proceed pro se in an untimely manner and by refusing to comply with court procedure.

#### A. *Timely Assertion of Pro Se Right*

A motion to proceed pro se is timely if made before the jury is impaneled, unless it is shown to be a tactic to secure delay. *Fritz,* 682 F.2d at 784. Here, the defendants indicated at the status conference a week before the first trial date that they would like to represent themselves. Speaking through Todd Flewitt, they indicated that they thought their attorneys were incompetent, that the attorneys were reluctant to take the case to trial and were not prepared. They further stated that their attorneys told them if they went to trial they were fairly sure they would be found guilty. The attorneys stated they were

ready to go to trial. The trial judge refused to give them different counsel.

I find that your reasons for not cooperating with counsel are inadequate. The reasons expressed are merely that the attorney has given you [sic] their frank evaluation of the case which is that you are likely to be convicted.... That is what I would expect an attorney to do and not to give overly optimistic advice to their client.

So I find that you made no showing as to any reason why I should dismiss these attorneys. They are competent lawyers, good lawyers. They have handled many cases, and they can handle yours as well.

Although you have a right to represent yourself, that right is not absolute and you are not prepared at this time to take over the representation of yourself.

A week later, on April 23, 1985, which was to be the morning of the trial, the defendants filed a motion for a continuance and discharge of counsel. They complained in the motion they were subject to "trial by ordeal," but they did not recite any facts to support that claim. They complained about ineffective representation by counsel without alleging any particular facts. The court stated that "because these are court appointed attorneys that will have to be paid by the government ... I will not permit you to pick and choose your own attorney that will be appointed at public expense without a good reason for it, and I haven't seen a good reason yet." Defendants recited a litany of alleged abuses by their counsel. These facts were disputed by the defendants' counsel. The court said, "I find that the attorneys were competent attorneys, they are able to handle the case and being prevented from doing so by the defendants. So I am not going to appoint other counsel." The court then allowed defendants to proceed pro se and set a new trial date of July 23, 1985. Defendants agreed to this date which gave them ninety days to prepare their case for trial.

On the eve of the July trial date, the defendants filed their motion to disqualify the judge and asserted *they had not properly waived counsel.* At this point, the district court changed the trial date for a

third time to October 8, 1985. On the eve of that trial date, five months after the district court granted defendants the right to proceed pro se, they had neither started or completed any trial preparation, had not used their advisory counsel or their investigator, and wanted more time to conduct discovery. The district court properly revoked their pro se status as he felt they were using it to delay the trial, and were not using the resources they were given to proceed with their case.

## B. Refusal to Comply with Court Procedure

A pro se defendant must comply with the relevant rules of procedural and substantive law. *Faretta v. California,* 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 2541 n. 46, 45 L.Ed.2d 562 (1975). A defendant has a constitutional right to waive counsel and conduct his own defense only if he is "able and willing" to abide by "rules of procedure and court room protocol." *McKaskle v. Wiggins,* 465 U.S. 168, 173, 104 S.Ct. 944, 948, 79 L.Ed.2d 122 (1984). *See also United States v. Merrill,* 746 F.2d 458, 465 (9th Cir.1984) (a pro se defendant is subject to the same rules of procedure and evidence as defendants who are represented by counsel.).

The defendants failed to file motions properly even though they were given the help of an advisory attorney, refused to conduct discovery or to participate in discovery matters, and refused to comply with the court's rulings or the rules for prisoners. The record clearly supports the district court's finding that the defendants refused to abide by court procedure.

On the morning of the April 23rd trial date, defendant Scott Flewitt filed a motion for a continuance and a notice of discharge of counsel. This motion was not filed correctly, the clerk did not have a copy, nevertheless the court considered and granted the motion. In July the defendants' motion to disqualify the judge contained affidavits claiming that they made an *ineffective waiver of counsel.* Upon motion by the government, the court held a hearing and

asked defendants about their waiver. Defendants refused to answer the court's questions because they insisted they should have twenty-one days from the government's motion in which to reply. Although the court had already granted defendants a ninety day continuance, the court gave them a further continuance of five months setting the trial date to October 8. At the status conference on September 30, 1985 before the October 8 trial date, defendants filed a motion requesting a stay pending appeal of their motion to disqualify the judge, in essence asking the trial court to once again delay the trial. In fact the court states:

I have noticed that although I have appointed an attorney for the express purpose of making any motions that you may want to make, there has been no motion made for a continuance of this matter up until today ... and I have been waiting for months to see whether or not you were going make any requests of me relative to trial preparation, and you haven't done so.

Defendants insisted that they had made four motions during this time. The court noted that none of these motions were adequate by law, however the defendants' request for an investigator had been granted. Further, the court had instructed defendants to resubmit their discovery motion with notice to the prosecution which they declined to do.

Defendants argued that they were denied a July 6 discovery request asking for co-counsel and access to their personal property being held in a warehouse. The court denied that request because the defendants had been appointed an investigator and advisory counsel, and absent a showing of proof, the discovery opportunities that they had been given were adequate. In fact the court stated, "What I should have done is just to strike your motion entirely because it contained improper materials relative to unflattering references to the United States Attorney which is against the local rules." The court very painstakingly tried to help defendants make an offer of proof so that he could grant their discovery motion even

though they had misfiled it and it did not comply with the rules. The defendants' answers to the court's inquiry were evasive and indirect and did not contain any specific information, for instance:

(Todd): We have a discovery motion prepared, but we want access to our documents first that are not any part of any evidence that is going to be used in the trial to prepare so that when we will request discovery and then we will employ the investigator to do any investigation work that has to be done.... We will make a full discovery motion after we have access to our property; but we don't know whether or not it was full discovery, full discovery in their terms (prosecution) of full discovery in our terms.

\* \* \* \* \* \*

(The Court): You should have made a motion, if necessary file it under seal in camera so the prosecution wouldn't see it, and explain to me why it is that I should expend many man hours of U.S. Marshal time or order a truck to bring it down to Terminal Island and find a place for you to examine it. Why it is that I need to do this inasmuch as the government offered to turn over to you everything that they intend to use in the case....

(Scott): Perhaps the motion was wanting, and perhaps we felt that in having an opportunity to argue it that those were the points we would bring out, but we didn't have an opportunity to argue it, so consequently the information didn't come out.

(The Court): Alright. I will give you that chance now, if you wish, to tell me what it is that is in those records that would justify my spending the kind of money that is evidently involved here.... I am not unwilling to do that if you give me reasonable basis to do so. I am giving you a chance now, since you have given me nothing in writing to support such an order, I am giving you a chance now to do it orally. We are eight days away from trial. Now if you want to do it with the prosecutor present or in

camera outside of his presence, I will give you that chance now.

(Miles): Well certainly if you are asking for specifics of what we are looking for, we will have to prepare it at a later date. But, of course, we are looking for a lot of paperwork, of course, to prove our innocence. Without it, of course, we can't prove our innocence with nothing to work with—to make an adequate defense.

(The Court): It has to have something to do with your case, but you still haven't given me any solid basis to go on.

(Miles): Financial records, business records, customer files.

Defendants were given the opportunity but refused to review original discovery materials that were offered by the prosecution, claiming that they were given inadequate materials to write with, they were given inadequate time to look at the material and that they were not given copies which they requested. The defendants refused to give handwriting exemplars and fingerprints to the postal inspection service. On the government's motion the district court ordered compliance and defendants refused to cooperate.

Mr. Mabry, Scott Flewitt's counsel, states that he went to Terminal Island several times to meet with Scott and Todd Flewitt to develop their defense.

Each time they would say, "Well, we have a bunch of witnesses." I said, "Well, give me one witness, anybody." So they wouldn't do that. On other occasions they wanted to see something about the diaries that the government had. I said, "O.k., I'll see whether I can get the diaries." I went up and got the U.S. Attorney and got the court to order that they brought up so they could look at the diaries, and then when I returned to Terminal Island to tell them what I had accomplished, they stated then "Oh, we want copies of the diaries. We don't want to go and see them." I said, "Well, wouldn't it be better if you just went in to see the diaries? I can look at them, but I don't know what I'm looking at." So they wouldn't accept that, and then

after that it was all down hill from then on.

When attorney Mabry tried to get a financial affidavit from Scott Flewitt, he refused to follow procedure.

On the day when we were in court, the court told me to get the affidavit and I went down to lock-up to get the affidavit. I started filling it out and Mr. Scott Flewitt told me he had already filled one out. I said, "Well, o.k. Why don't you take this. I'll give you an envelope and fill it out from the one you—from the copy that you have at T.I. and send it back to me." Then I thought better. I said, "No, don't do that because I'll be out in the next day or so, have it at that time."

So, from that day on I made at least three trips to T.I., maybe two trips to T.I., and I never got the affidavit. I finally got an affidavit in the mail which contained a lot of material having nothing to show anything about finances, unsigned, of course, and that's the nature of the situation. That's the type of situation we have been going through with these defendants and it's—in an attempt to try to represent them.

The court's finding that defendants were unable to comply with the procedural rules was not clearly erroneous. *Smith*, 780 F.2d at 811.

The right to self representation cannot be used to "subvert the trial" or to "effect other dilatory purposes." *United States v. Coupez*, 603 F.2d 1347, 1351 (9th Cir.1979). *See Faretta*, 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46. Defendants' refused to cooperate with their counsel and to comply with their requests, thus hindering the development of their defense. This further undermines their *Faretta* right, showing they were unwilling to abide by court procedure and rules. *McKaskle*, 465 U.S. at 173, 104 S.Ct. at 948.

## IV.

## CONCLUSION

The district court did not clearly err in revoking Todd and Scott Flewitts' pro se

status. The Flewitts were equivocal in asserting their right of self representation and used that right to delay and frustrate the court's ability to get their case to trial. They were incapable of conducting their defense. I respectfully dissent and would affirm the district court.