FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, <br><br> v. <br><br> TODD C. ENGEL, *Defendant-Appellant.* | No. 18-10293 <br><br> D.C. No. 2:16-cr-00046-GMN-PAL-15 <br><br> OPINION |

Appeal from the United States District Court
for the District of Nevada
Gloria M. Navarro, District Judge, Presiding

Argued and Submitted May 29, 2020
Las Vegas, Nevada

Filed August 6, 2020

Before: William A. Fletcher, Jay S. Bybee,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Bybee

# SUMMARY[*]

## Criminal Law

The panel vacated Todd Engel's conviction for obstruction of justice and interstate travel in aid of extortion, and remanded for a new trial, in a case in which the district court terminated Engel's right to represent himself during his trial and appointed standby counsel to represent him instead.

Because the result is the same under either standard, the panel did not resolve whether de novo or abuse-of-discretion review applies to a defendant's claim on direct criminal appeal that his Sixth Amendment right to self-representation was violated.

The panel held that the facts do not support the termination of Engel's right to represent himself because Engel was not defiant and did not engage in blatantly outrageous conduct, such as threatening a juror or taunting the district judge; to the contrary, he merely asked a question prejudicial to the government. The panel observed that a prior court order was not so unambiguous such that Engel's conduct clearly violated it. The panel wrote that even if Engel did violate that order, that is insufficient to justify terminating his right to represent himself because a single instance of disobedience that is unaccompanied by open defiance or disruption does not justify termination of the constitutional right to self-representation without prior warning.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel wrote that the violation was not cured by the fact that the termination of Engel's right to represent himself was only for a limited time, as Engel was precluded from cross-examining government witnesses, violating the Sixth Amendment. The panel wrote that other instances the government points to do not demonstrate that Engel's conduct was disruptive. The panel wrote that even if cases addressing *Batson* challenges or claims of juror bias are apposite and appropriate deference is given to the district court's observations of Engel's body language and demeanor, the record does not establish that Engel's conduct was sufficiently obstructive or disruptive.

Because a violation of a defendant's Sixth Amendment right to self-representation is structural error, the panel vacated the conviction and remanded for a new trial.

## COUNSEL

Warren Markowitz (argued), The Markowitz Law Firm, Las Vegas, Nevada, for Defendants-Appellants.

Adam Flake (argued), Assistant United States Attorney; Elizabeth O. White, Appellate Chief; Nicholas A. Trutanich, Attorney General; Office of the Attorney General, Las Vegas, Nevada; for Plaintiff-Appellee.

Roger I. Roots, Livingston, Montana, for Amici Curiae Idaho Political Prisoner Foundation and Read 3%ers of Idaho.

## OPINION

BYBEE, Circuit Judge:

A jury convicted Appellant Todd Engel of obstruction of justice and interstate travel in aid of extortion. He contends that the district court violated the Sixth Amendment during his trial when the court terminated his right to represent himself and appointed standby counsel to represent him instead. We hold that Engel's conduct was not sufficiently disruptive to justify termination of his right to self-representation. Because this is a structural error, we vacate Engel's conviction and remand for a new trial.

## I.  BACKGROUND

Engel's criminal conviction stems from his involvement in an armed standoff between agents of the Bureau of Land Management (BLM) and a group of private militia members rallied behind Nevadan Cliven Bundy.[1] In early April 2014, Engel traveled from his home in Idaho to Bunkerville, Nevada, to impede a BLM operation. When Engel and the other militia members confronted the BLM agents, Engel was holding an AR-15, wearing combat gear, and located on a bridge overlooking BLM's position. Fortunately, no shots were ever fired, and the BLM agents eventually retreated.

Engel then became a target of federal criminal prosecution. In March 2016, a grand jury returned a

---

[1] For a more detailed account of the facts leading up to the confrontation between BLM and Bundy's group, we refer the reader to our opinion in *United States v. Bundy*, No. 18-10287, filed contemporaneously with this opinion.

superseding indictment against nineteen defendants.  Engel was named in eleven counts.  The district court severed the defendants' trials into three tiers, placed Engel in Tier 3 (the tier containing the defendants alleged to be least culpable), and ordered those defendants to be tried first.

At the commencement of his trial, Engel asked to represent himself.  After conducting a *Faretta* hearing,[2] the district court granted his request, but appointed standby counsel to be used if necessary.  Engel represented himself during the majority of the trial.

That changed on the twenty-first day of trial.  While Engel was cross-examining a government witness, the following exchange occurred:

> Q.  Was Dan Love the special agent in charge of this operation?
>
> A.  Yes, he was.    He was an incident commander.
>
> Q.  And in any video or audio do—have you seen anywhere where I had any discussions with him?
>
> A.  No.
>
> [GOVERNMENT COUNSEL]:    Again, found—well—again, foundation if we're talking about which video and audio.

---

[2] *See Faretta v. California*, 422 U.S. 806 (1975).

THE COURT: He's answered the question.

BY PRO SE ENGEL:

Q. Isn't it true that Dan Love's under criminal investigation for—

[GOVERNMENT COUNSEL]: Objection, Your Honor.

THE COURT: Mr. Engel . . .

[GOVERNMENT COUNSEL]: Move to strike.

THE COURT: The jury will disregard Mr. Engel's—

PRO SE ENGEL: No further questions.

To put this incident in context, Dan Love was the BLM agent in charge of the impoundment effort. After the events near the Bundy Ranch, a government report was issued that detailed several breaches of protocol and abuses of power that Love committed during events having nothing to do with Bundy or Engel. Although the report said nothing about Love's conduct during the confrontation with BLM agents in April 2014, Engel and his co-defendants hoped to get this information before the jury to cast BLM in a negative light. But the district court denied the defendants' motion to compel Love's attendance as a witness, finding that questioning Love about the report would be irrelevant. Thus, through the question he asked, Engel presumably sought to introduce the jury to the evidence underlying the government report

regarding Love's misconduct, even though Love was not testifying. Further, no criminal investigation of Love was ever initiated, so Engel's question about whether Love was under criminal investigation implied a false premise.

After the district court excused the jury following Engel's question, the government renewed its objection. The government argued that Engel "should be sanctioned for it and his pro se status should be revoked."

In response, Engel was calm and apologetic. He explained that he asked the question because Love had "sworn a Grand Jury testimony against me" and Engel was frustrated that he was "not even going to be able to talk to [Love]." But he concluded his explanation by saying, "I apologize for the question" and asked that he be allowed to continue representing himself.

The district court ultimately agreed with the government. The court found that Engel's question was "improper," and that Engel "knew very well that that question could not be asked." Accordingly, the district court revoked Engel's right to represent himself, appointing standby counsel—John George—to represent Engel "for the remainder of the day." When George objected, arguing that Engel had "done a fairly remarkable job" representing himself thus far and that a less drastic sanction was appropriate, the district court disagreed, finding that Engel's "intentional[]" decision to ask the question "indicated that he's not going . . . to follow my court order." The court also noted that Engel "was very smug about it afterwards when he went back and sat down, very proud of himself for sliding it in." Ultimately, the court was unwilling "to risk any more that [Engel was] going to say something in front of the jury that is not permitted and that

would potentially cause me to call a mistrial." After hearing the court's decision, Engel simply stated, "Okay. I'm sorry."

George represented Engel the remainder of the twenty-first day of trial. During the proceedings, George cross-examined several more government witnesses on Engel's behalf. As the trial was drawing to a close, the district court allowed Engel to represent himself again for the purposes of closing argument.

Following trial, the jury convicted Engel on two counts: Obstruction of the Due Administration of Justice in violation of 18 U.S.C. §§ 1503 & 2, and Interstate Travel in Aid of Extortion in violation of 18 U.S.C. §§ 1952(a)(2) & 2. The district court sentenced Engel to 168 months' imprisonment and ordered him to pay $1,636,790.33 in restitution. An amended judgment against Engel was entered on September 24, 2018, and this appeal followed.[3]

## II.  DISCUSSION

### A.  *Standard of Review*

We have never definitively articulated the standard of review that applies to a defendant's claim on direct appeal of a criminal conviction that his Sixth Amendment right to self-representation was violated. Engel argues that we should apply de novo review. The Second, Third, Fifth, Eighth, and Tenth Circuits have taken this position. *See United States v. Hausa*, 922 F.3d 129, 134 (2d Cir. 2019) (per curiam); *United States v. Weast*, 811 F.3d 743, 748 (5th Cir. 2016); *United*

---

[3] The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

*States v. Mosley*, 607 F.3d 555, 558 (8th Cir. 2010); *United States v. Smith*, 413 F.3d 1253, 1279 (10th Cir. 2005); *United States v. Peppers*, 302 F.3d 120, 127 (3d Cir. 2002) (employing "plenary review"). And at least one of our prior cases implicitly supports this position. *See United States v. Flewitt*, 874 F.2d 669, 676 (9th Cir. 1989) (holding that "the district court *erred* by not allowing the defendants to proceed pro se at trial" (emphasis added)). The government contends that we should apply an abuse-of-discretion standard because the termination of a defendant's right to self-representation implicates a district court's management of the courtroom. The Seventh Circuit has taken this position. *See United States v. Brock*, 159 F.3d 1077, 1079 (7th Cir. 1998). Because we think the result in this case is the same under either standard, we need not resolve this split in authority. *See United States v. Smith*, 780 F.2d 810, 811 (9th Cir. 1986) (declining to clarify the correct standard of review because the outcome would be the same under any standard).

B. *Termination of Engel's Right to Represent Himself*

The Sixth Amendment grants a criminal defendant "personally the right to make his defense." *Faretta*, 422 U.S. at 819. This right guarantees a defendant "actual control over the case he chooses to present to the jury," and it "exists to affirm the accused's individual dignity and autonomy." *McKaskle v. Wiggins*, 465 U.S. 168, 178 (1984). As the Supreme Court has recognized, the right to self-representation has a longstanding historical pedigree, having been imported by the Framers from English legal practice. *See Faretta*, 422 U.S. at 821–32. Although the Sixth Amendment does not explicitly articulate a right to self-representation, the right is implied by the Sixth Amendment's language. Under the Amendment, "[i]t is the accused, not counsel, who must be

'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.'" *Id.* at 819. In short, "[t]he right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Id.* at 819–20.

Even so, a defendant's right to self-representation "is not absolute." *United States v. Johnson*, 610 F.3d 1138, 1144 (9th Cir. 2010). A district court "may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct," *Faretta*, 422 U.S. at 834 n.46, or who is unable or unwilling "to abide by rules of procedure and courtroom protocol," *Wiggins*, 465 U.S. at 173.

Several cases illustrate this principle at work. For example, the right to self-representation may not be terminated even though a defendant "file[s] numerous nonsensical pleadings, [is] uncooperative at times," insists "on wearing [] prison garb in front of the jury," and confusingly tells the jury that "he want[s] the jury to 'enter a guilty plea'" during opening statements. *Johnson*, 610 F.3d at 1143–44. Similarly, a defendant's self-representation cannot be revoked merely because the defendant lacks familiarity "with the rules of evidence or the specifics of criminal procedure." *United States v. Lopez-Osuna*, 242 F.3d 1191, 1200 (9th Cir. 2000); *see also Flewitt*, 874 F.2d at 674–75 (holding that a defendant does not forfeit the right to represent himself by failing "to prepare properly for trial" or filing "continual motions" that are largely irrelevant). On the other hand, the right to self-representation can be terminated when a defendant engages in "heated discussion[s]" with the judge, threatens a juror such that the

juror must be dismissed, and tells the jury something that the district court specifically ordered him not to disclose. *United States v. Mack*, 362 F.3d 597, 599 (9th Cir. 2004); *see also Badger v. Cardwell*, 587 F.2d 968, 971–73 (9th Cir. 1978) (affirming the removal of a pro se defendant from the courtroom after he engaged in "an increasingly heated dialogue" with the judge, "raised a clenched fist" at the judge, and "taunted the court to expel him").

When viewed in comparison to these cases, the facts here do not support the district court's termination of Engel's right to represent himself. Unlike the defendants in *Mack* and *Badger*, Engel was not defiant and did not engage in blatantly outrageous conduct, such as threatening a juror or taunting the district judge. To the contrary, Engel merely asked a question prejudicial to the government. When the government objected, Engel remained calm and ultimately acquiesced in the court's decision to revoke his right to self-representation. He was never removed from the courtroom, nor did he need to be removed.

This conclusion is not undermined by the district court's suggestion that Engel had disobeyed a "prior court order" by asking whether Love was under criminal investigation. A defendant may forfeit the right to represent himself if he "fail[s] to obey the rulings of the court." *Flewitt*, 874 F.2d at 673; *see also Wiggins*, 465 U.S. at 173 (noting that a self-represented defendant must be "able and willing to abide by rules of procedure and court protocol"). But it is not clear that Engel did violate a court order. The order to which the district court appears to be referring is an oral ruling denying a motion to compel Love to appear as a witness because questioning him about the events detailed in the report would be irrelevant. In that oral ruling, the court did not specifically

address whether other witnesses could be asked about the investigation of Love. Perhaps it was implied that such questions should not be asked, but the order is not so unambiguous such that Engel's conduct clearly violated it.

And even if Engel did violate that single order, that is insufficient to justify terminating his right to represent himself. Termination may be appropriate when the defendant has engaged in "severely disruptive behavior." *Lopez-Osuna*, 242 F.3d at 1200. Prior to this moment on the twenty-first day of trial, Engel appears to have complied with all the court's orders. Indeed, the district court never previously had occasion to reprimand Engel for disobedience or threaten to revoke his right to represent himself. Had Engel repeatedly violated the court's orders, that might be sufficiently disruptive to revoke his pro se status. But a single instance of disobedience that is unaccompanied by open defiance or disruption does not justify the termination of Engel's constitutional right to self-representation without prior warning. Engel's single question appears no more disruptive or obstructive than questions sometimes asked by counsel, to which opposing counsel would object. Had Engel's own counsel asked a similar question, the district court would have sustained the objection and, most likely, admonished counsel. As a result, the district court's action violated Engel's Sixth Amendment right.

This violation was not cured by the fact that the termination of Engel's right to represent himself was only for a limited time. The Sixth Amendment right to self-representation "applies at all critical stages" of a criminal prosecution. *United States v. Rice*, 776 F.3d 1021, 1024 (9th Cir. 2015). George, the standby counsel appointed to represent Engel, cross-examined several of the government's

witnesses. The cross-examination of the prosecution's witnesses at trial is clearly a critical stage. *See United States v. Yamashiro*, 788 F.3d 1231, 1234–35 (9th Cir. 2015) ("A critical stage is any stage of a criminal proceeding where substantial rights of a criminal accused may be affected." (internal quotation marks omitted)). Thus, even though the district court reinstated Engel's right to represent himself before closing arguments, Engel was precluded from cross-examining government witnesses, violating the Sixth Amendment.

The government makes two final arguments for why no constitutional violation occurred. First, the government contends that revocation was proper because the objectionable question Engel asked was merely the latest in a long line of objectionable questions he posed during trial. But none of the instances the government points to demonstrates that Engel's conduct was disruptive. Indeed, when the court sustained objections to Engel's questions, Engel would either move on or attempt to rephrase the question. Engel never challenged the judge's rulings or obstinately persisted in a line of questioning after being ordered not to do so. If anything, the objectionable questions previously asked by Engel show only that Engel lacked familiarity "with the rules of evidence or the specifics of criminal procedure," which does not support the termination of his right to self-representation. *See Lopez-Osuna*, 242 F.3d at 1200.

Second, the government argues that this Court should defer to the district court's decision because it was based, at least in part, on "its observations of [Engel's] body language and demeanor." To support this argument, the government relies on cases addressing *Batson* challenges or claims of

juror bias. Even assuming those cases are apposite and appropriate deference is given to the district court, the record simply does not establish that Engel's conduct was sufficiently obstructionist or disruptive. Engel's "smug" look suggesting that he was "very proud of himself for sliding it in" is, without more, inadequate cause for depriving Engel of his *Faretta* rights. We are aware of no case where we have upheld the termination of a defendant's right to self-representation for conduct as tame as Engel's. We decline to do so here.

We are sympathetic to the situation the district court faced. The risk of declaring a mistrial after twenty-one days of trial in a high-profile case with six co-defendants is a risk that ought to be avoided. But the Sixth Amendment guarantees a defendant's right to represent himself. And that right can be revoked only when the defendant exhibits clearly defiant or obstructionist misconduct. Engel's conduct here falls far short of that standard.

We conclude that the district court's termination of Engel's right to represent himself violated the Sixth Amendment. A violation of a defendant's Sixth Amendment right to self-representation is structural error. *See Wiggins*, 465 U.S. at 177–79 & n.8; *Rice*, 776 F.3d at 1025 ("The Supreme Court has found denial of the right of self-representation to be structural error because it deprives a defendant a fair chance to present his case in his own way." (internal quotation marks omitted)). Thus, we must vacate Engel's criminal conviction and remand for a new trial.

**VACATED AND REMANDED.**