59 F.3d 167
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Marlowe F. BOSTIC, Defendant-Appellant.
 No. 94-5462.
 United States Court of Appeals, Fourth Circuit.
 Argued March 8, 1995.
Decided June 21, 1995.
 
 ARGUED: George Alan DuBois, Assistant Federal Public Defender, Raleigh, NC, for Appellant. John Samuel Bowler, Assistant United States Attorney, Raleigh, NC, for Appellee. ON BRIEF: Janice McKenzie Cole, United States Attorney, Raleigh, NC, for Appellee.
 Before WILKINS and HAMILTON, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Marlowe Bostic appeals his conviction for criminal contempt, see 18 U.S.C. Sec. 401(3). For reasons that follow, we affirm.
 
 
 2
 * This case has its genesis in the early 1990s when Bostic and a business partner, Roger Page, were sued, in four separate lawsuits, by purchasers of lots at a resort named Ocean Ridge Village that Bostic and Page were developing in North Topsail Beach, North Carolina. The suits, which alleged fraud, deceptive trade practices, and breach of contract, were consolidated and resolved in two separate trials. In the first consolidated trial, a jury returned a verdict in favor of the plaintiffs on all counts, awarding $199,944 in compensatory damages and $500,000 in punitive damages to one set of plaintiffs and $213,960 in compensatory damages and $500,000 in punitive damages to the other. In the second consolidated trial, a different jury returned a verdict in favor of the plaintiffs on all counts; the plaintiffs, having elected to proceed with rescission, were awarded, by way of restitution, $2,283,739.40 and $1,572,943, respectively. The district court trebled the restitutionary amounts awarded by the jury and entered judgment in favor of one set of plaintiffs in the amount of $6,851,218.20 and $4,718,829 in favor of the other. Accordingly, the combined effect of the verdicts left Bostic and Page liable for approximately $12,500,000. Bostic and Page appealed these judgments, and we affirmed the judgment of the first consolidated trial, but reversed the trebling of the jury award in the second consolidated trial. See Winant v. Bostic, 5 F.3d 767, 776-77 (4th Cir.1993). Accordingly, Bostic's liability was reduced to approximately $5,000,000.
 
 
 3
 Immediately after the entry of the judgments in the civil trials, Bostic attempted to hide his assets by transferring property to other per sons and/or entities in an effort to frustrate the plaintiffs' efforts to collect on the judgments. These property transfers included transfers to Bostic's son, his wife, and other corporate entities.
 
 
 4
 On July 23, 1992, in an attempt to ascertain Bostic's assets, the plaintiffs in the civil litigation (the plaintiffs) served him with a set of interrogatories. Bostic did not respond. On August 28, 1992, the plaintiffs filed a motion to compel Bostic to answer the interrogatories. On September 22, 1992, a magistrate judge ordered Bostic to answer the interrogatories by October 12, 1992. On October 12, 1992, without the assistance of counsel, Bostic filed his response.
 
 
 5
 Two of the interrogatories pertained to a corporation known as Golden Acres with which Bostic and his family had been associated since its formation in 1971. Interrogatory number thirty asked: "[w]hat percent ownership do you claim in Golden Acres?" (J.A. 745). Interrogatory number thirty-three asked Bostic to: "[i]dentify the owners of all stock or all persons claiming ownership interest in Golden Acres." Id. at 746. In response to these interrogatories, Bostic stated that his wife, Frances Bostic, owned 100% of Golden Acres and that he personally had no ownership interest in the corporation.
 
 
 6
 For good reason, Bostic's answers were viewed with suspicion by the plaintiffs. Bostic's answers to these two interrogatories--that his wife owned all of the stock in Golden Acres and that he had no ownership interest in Golden Acres--were inconsistent with most of the evidence. In fact, there was evidence a-plenty that Bostic had an ownership interest in Golden Acres. First, the corporate tax returns of Golden Acres from 1971 until 1990 indicate that Bostic held 93.33% or 100% of the stock in Golden Acres. Second, Bostic's motion to claim exempt property, filed with the district court on June 19, 1992, lists his assets as of June 15, 1992; one of those claimed assets is a 10% interest in Golden Acres valued at $100,000. Third, Bostic's individual tax returns for the years 1988, 1989, and 1990 list him as a 93.33% shareholder of Golden Acres, with his wife listed as holding the remaining shares. Fourth, in Bostic's pretrial deposition taken on July 17, 1991, Bostic claimed that he owned "some of the stock" in Golden Acres, though he professed not to know the exact split of the interest between himself and his wife. Fifth, for several years, Bostic had issued financial statements to individuals and governmental agen cies as part of the marketing of his real estate developments which indicated that he owned Golden Acres. Bostic captioned these financial statements: "M.F. Bostic trading as Golden Acres." Id. at 797.
 
 
 7
 Still not satisfied with the completeness of Bostic's answers, the plaintiffs, on November 30, 1992, filed a second motion to compel. In this motion, the plaintiffs argued that Bostic should be held in civil contempt for violating the September 22 order compelling Bostic to answer the plaintiffs' interrogatories truthfully and completely.
 
 
 8
 On February 1, 1993, the magistrate judge held a hearing on the plaintiffs' motion for civil contempt. At this hearing, Bostic was represented by counsel. With respect to the motion, Bostic's counsel explained to the court that Bostic had prepared the answers by himself, without the assistance of counsel, and counsel requested additional time to supplement the answers with legal assistance.
 
 
 9
 On February 8, 1993, the magistrate judge granted the plaintiffs' motion to compel and ordered Bostic to supplement his responses as necessary to insure the answers' truthfulness and completeness by March 1, 1993. The magistrate judge specifically reserved action on plaintiffs' motion for contempt until Bostic supplemented his answers, explaining that Bostic was subject to a court order compelling him to answer the interrogatories completely and truthfully, and that any responses not meeting this requirement subjected him to the penalties of contempt. Bostic timely served his supplemental responses, indicating again that his wife owned all of the stock in Golden Acres and that he had no ownership interest in the corporation.
 
 
 10
 A hearing was held on May 27, 1993 on the plaintiffs' motion for civil contempt. At this hearing, the magistrate judge reviewed the plaintiffs' allegations of contemptuous behavior and Bostic was afforded an opportunity to respond to each allegation. The magistrate judge certified the facts of contemptuous behavior to the district court, and the district court on August 6, 1993 held a hearing for Bostic to show cause why he should not be held in contempt. At the conclusion of the hearing, the district court held Bostic in civil contempt and ordered that he be taken into custody. On August 10, 1993, the district court cited Bostic with criminal contempt, appointed counsel, and ordered a jury trial. In its August 10, 1993 criminal contempt order, the district court cited Bostic with: (1) willfully representing and concealing his ownership interest in Golden Acres; and (2) attempting to conceal certain parcels of real property from the plaintiffs.
 
 
 11
 Subsequent to the district court's entry of its August 10 order, it was shown that Bostic provided his civil trial lawyer with a complete list of his real property, but that Bostic's counsel inadvertently omitted some of the properties in the March 1993 supplemental response to the interrogatories. For this reason, the government's prosecution proceeded solely on the ground that Bostic willfully misrepresented his interest in Golden Acres.
 
 
 12
 At trial, the government presented evidence that, since 1971, Bostic owned an interest in Golden Acres and was responsible for its day-today operation. The aforementioned tax returns, financial statements, and the motion to claim exempt property filed in June 1992 were all admitted into evidence. The government also introduced evidence, pursuant to Fed.R.Crim.P. 404(b), that Bostic attempted to transfer property to his son, his wife, and other corporate entities for the purposes of avoiding the civil judgments.
 
 
 13
 Bostic's defense at trial was based on the alleged original stock certificates of Golden Acres. These stock certificates showed three original shares in the names of Bostic's father, mother, and wife. The stock certificates also showed that Bostic's parents transferred their shares on October 4, 1971, the same day the corporation was set up, to Bostic's wife. That Bostic's wife was the sole stockholder of Golden Acres was corroborated by the corporate minute book, which indicated that Bostic's mother, father, and wife were the only subscribers of shares before the corporation was officially formed. Bostic claimed that he first realized that he had no ownership interest in Golden Acres in July 1992 after meeting with his attorneys.
 
 
 14
 The government, however, introduced evidence that the stock certificates and the corporate minute book were fraudulent. A document analyst from the United States Secret Service testified that ink used to make the handwritten entries on the stock certificates was not available until three years after the date represented on the certifi cates. Specifically, the handwritten entries on the stock certificates included the name of the individual to whom each stock certificate was made out, the number of shares, and the October 4, 1971 date of issuance. The expert also testified that the same ink was used for the signature of Francis Bostic in the corporate minute book from 1971-1992.
 
 
 15
 A jury convicted Bostic, and the district court sentenced him to twenty-one months' imprisonment. Bostic appeals.
 
 II
 
 16
 Bostic contends there was insufficient evidence for the jury to convict him of criminal contempt. We disagree. "Our standard of review is whether there is substantial evidence, taking the view most favorable to the government, from which a rational fact finder could find beyond a reasonable doubt, ... that [Bostic] 'willfully, contumaciously, intentionally, with a wrongful state of mind violated' " the magistrate judge's orders of September 22, 1992 and February 8, 1993. United States v. Johnson, 659 F.2d 415, 419 (4th Cir.1981) (quoting Richmond Black Police Officers Ass'n v. City of Richmond, 548 F.2d 123, 129 (4th Cir.1977)).
 
 
 17
 To sustain a conviction under 18 U.S.C. Sec. 401(3), the alleged contemnor must "[d]isobe[y] or resist[ ] ... [a] lawful writ, process, order, rule, decree or command" of the court. The order of the court must be sufficiently "clear and unequivocal at the time it is issued." Traub v. United States, 232 F.2d 43, 47 (D.C.Cir.1955). Whether an order is clear depends on the context in which it is issued and the audience to which it is addressed. See, e.g., United States v. Robinson, 922 F.2d 1531, 1534 (11th Cir.1991). In addition, the alleged contemnor must violate the order willfully, that is, criminal contempt requires "a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful." United States v. Greyhound Corp., 508 F.2d 529, 531-32 (7th Cir.1974); see also United States v. Warlick, 742 F.2d 113, 117 (4th Cir.1984). Thus, willfulness is not present when there "is a '[g]ood faith pursuit of a plausible though mistaken alternative.' " Greyhound Corp., 508 F.2d at 532 (quoting In re Brown, 454 F.2d 999, 1007 (D.C.Cir.1971)).
 
 
 18
 The sufficiency issue presented in this appeal asks whether a rational trier of fact could have found, beyond a reasonable doubt, that Bostic intentionally lied when he stated in his answers to the interrogatories that he had no claim of an ownership interest in Golden Acres. We believe the government produced sufficient evidence at trial to sustain the conviction. First, the corporate tax returns for Golden Acres indicate that for twenty years, beginning in 1971, Bostic was listed as the owner of 93.33% or 100% of Golden Acres. Second, the evidence is unquestionably clear that, throughout the 1980s, Bostic claimed he was the owner of Golden Acres (through his individual tax returns and financial statements) and maintained complete control over all of the affairs of Golden Acres. Third, there is abundant evidence that, after the judgments in the civil cases, Bostic attempted to hide his assets with various people and corporate entities, including his interest in Golden Acres. This evidence was sufficient to allow a rational trier of fact to conclude that Bostic intentionally lied when he stated in his answers to the interrogatories that he had no claim of an ownership interest in Golden Acres.
 
 
 19
 Bostic relies heavily, if not exclusively, on the stock certificates and the corporate minute book as conclusive evidence that he had a good faith belief that he had no claim of an ownership interest in Golden Acres when he answered the interrogatories. This argument is not persuasive. The government produced ample evidence that the stock certificates and the corporate minute book were totally unreliable, and perhaps fraudulent, and, thus, it was up to the jury to assess the weight to be given to this evidence. In short, whether Bostic asserted in good faith that he had no claim of an ownership interest in Golden Acres was a jury question. The jury resolved it against Bostic. In sum, because the government's evidence is sufficient to support Bostic's criminal contempt conviction, the judgment of the district court must be affirmed.
 
 
 20
 AFFIRMED.